THE DAVIS LAW FIRM, APC
TIMOTHY C. DAVIS (SBN 60936)
tdavis@sfdavislaw.com
JEANNE M. FAHEY (SBN 179114)
JFahey@sfdavislaw.com
625 Market Street, 12th Floor
San Francisco, California 94105
Telephone:    (415) 278-1400
Facsimile:    (415) 278-1401

Attorneys for Plaintiff
BONNIE J. SCHMIDT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BONNIE J. SCHMIDT,<br><br>              Plaintiff,<br><br>     v.<br><br>SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation; SIEMENS CORPORATION, a New York corporation; SIEMENS AG, a German public stock corporation; BJOERN FISCHER, an individual; HOLGER LIEBEL, an individual; and DOES 1-20,<br><br>              Defendants. | Case No. C08-02950 RS<br><br><br>**DECLARATION OF MARGUERITE E. MEADE IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND TO THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA UNDER 28 U.S.C. § 1447(C)**<br><br>[28 U.S.C. § 1404(a)]<br><br>Date:          August 27, 2008<br>Time:          9:30 a.m.<br>Courtroom:   4<br>Judge:        Honorable Richard Seeborg<br>                  (or alternate date upon<br>                  Reassignment: Declination<br>                  To Proceed Before<br>                  Magistrate Judge Filed) |

     I, Marguerite E. Meade, of The Davis Law Firm, hereby declare:

     1.      I am an attorney licensed to practice law in the State of California and am an attorney

with The Davis Law Firm, counsel of record for Plaintiff Bonnie J. Schmidt ("Plaintiff") in this matter.

I have personal knowledge of the facts set forth in this Declaration and, if called as a witness in Court, I

could and would testify under oath to the facts contained in this Declaration.

625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

The Davis Law Firm.
A Professional Law Corporation

1

2      2.          Plaintiff filed this action for Wrongful Termination, Employment Discrimination,

3    Retaliation and Breach of Implied Contract in the Santa Clara County Superior Court on August 9,

4    2007.  Attached hereto as Exhibit 1 is a true and correct copy of Plaintiff's Complaint.

5      3.          On February 11, 2008, Plaintiff voluntarily dismissed corporate defendant

6    Siemans AG.  Attached hereto as Exhibit 2 is a true and correct copy of the Request for Dismissal as to

7    Defendant Siemans AG only.

8      4.          On March 28, 2008 the parties stipulated to the filing of a First Amended

9    Complaint.  Attached hereto as Exhibit 3 is a true and correct copy of the Stipulation and Order

10   Regarding Filing of First Amended Complaint.

11     5.          Attached hereto as Exhibit 4 is a true and correct copy of Plaintiff's First

12   Amended Complaint.  The only change from the original complaint was the addition of Paragraph 52,

13   to allege a disparate impact claim in Plaintiff's Employment Discrimination cause of action.  (See

14   Stipulation and Order, p. 2 and First Amended Complaint, ¶ 52.)

15     6.          The parties agreed to mediate this matter on September 3, 2008.  If the matter

16   does not settle, the parties will attend a Trial Setting Conference scheduled for September 9, 2008.

17   Attached hereto as Exhibit 5 is a true and correct copy of the Joint Stipulation Regarding Trial Setting

18   Conference and Order.

19     7.          On March 3, 2008, the California Supreme Court issued its opinion in *Jones v.*

20   *The Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158 (2008).  A true and correct copy of majority's

21   opinion in *Jones* is attached hereto as Exhibit 6.

22     8.          I reviewed the *Jones* opinion shortly after it was issued.  *Jones* held that

23   nonemployer individuals could not be personally held liable for Retaliation under the Fair Employment

24   and Housing Act (FEHA).  *Id.* at 1173-74.  Prior to the Jones opinion, I was aware that California

25   courts and the Ninth Circuit had held that individuals <u>could</u> be personally liable for retaliation under

26   FEHA.  *Jones* thus eliminated the basis for Plaintiff's claims against the individual defendants Fischer

27   and Liebel.

28     9.          After the *Jones* opinion was issued, Defendants' attorney Teresa Burlison

The Davis Law Firm.
A Professional Law Corporation
625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

DECLARATION OF MARGUERITE E. MEADE IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND

("Burlison") contacted me and asked that individual defendants Fischer and Liebel be dismissed. Since the case was not yet final, I declined to dismiss the individual defendants.

10.        Rehearing in *Jones* was denied April 30, 2008. That very afternoon, Burlison again contacted me by e-mail and requested me to dismiss the individual defendants. Attached hereto as Exhibit 7 is a true and correct copy of this e-mail.

11.        Counsel for defendants continued to press for the dismissal of the individual defendants, even preparing the dismissal paperwork and offering to file it on our behalf.

12.        When Plaintiff had not filed the dismissals as requested, Burlison contacted me on May 29, 2008 by e-mail, again requesting the dismissal of the individual defendants within one day. Attached hereto as Exhibit 8 hereto is a true and correct copy of this e-mail.

13.        I took this e-mail as an implied threat that Defendants would file a motion and possibly seek sanctions. In light of Defendant's threats and in light of the fact that the *Jones* opinion eliminated the previously valid Retaliation claim against defendants Fischer and Liebel, and in light of the fact that forcing Defendant to file such a motion would result in a waste of the parties' and the court's resources, I prepared Requests for Dismissal of Defendants Fischer and Liebel.

14.        Plaintiff filed Requests for Dismissal on June 3, 2008, and these individuals were dismissed without prejudice from the action. Attached as Exhibit 9 hereto are true and correct copies of the dismissals of the individual defendants. Although I technically caused documents to be filed in the Santa Clara County Superior Court, I did not *voluntarily* dismiss these individuals, but was compelled to do so.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct and this Declaration was executed on July 11, 2008 at San Francisco, California.

_____/s/_____

Marguerite E. Meade

DECLARATION OF MARGUERITE E. MEADE IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND

EXHIBIT 1

1   THE DAVIS LAW FIRM, APC
    TIMOTHY C. DAVIS (SBN 60936)
2   tdavis@sfdavislaw.com
    DAMIEN P. LILLIS (SBN 191258)
3   dlillis@sfdavislaw.com
    625 Market Street, 12th Floor
4   San Francisco, California 94105
    Telephone:    (415) 278-1400
5   Facsimile:    (415) 278-1401

6   Attorneys for Plaintiff
    BONNIE J. SCHMIDT

7

8                    SUPERIOR COURT OF CALIFORNIA

9             IN AND FOR THE COUNTY OF SANTA CLARA

10                      UNLIMITED JURISDICTION

11

12                                          Case No. **107CV091780**

13  BONNIE J. SCHMIDT,

        Plaintiff,
14
15      v.                                  **COMPLAINT FOR DAMAGES**

16  SIEMENS MEDICAL SOLUTIONS USA,      1.   WRONGFUL TERMINATION IN
    INC., a Delaware corporation; SIEMENS        VIOLATION OF PUBLIC POLICY
17  CORPORATION, a New York corporation;    2.   EMPLOYMENT DISCRIMINATION
    SIEMENS AG, a German public stock     3.   RETALIATION
18  corporation; BJOERN FISCHER, an individual;   4.   BREACH OF IMPLIED CONTRACT
    HOLGER LIEBEL, an individual; and DOES 1-
19  20,
                                            **JURY TRIAL DEMANDED**
        Defendants.
20

21

22      Plaintiff Bonnie Schmidt ("Plaintiff") alleges as follows for her Complaint for Damages:

23                      **JURISDICTION AND VENUE**

24      1.   Venue is proper in this Court because one or more of the Defendants reside in Santa

25  Clara County ("County"), many of the acts complained of occurred in this County, and the obligations

26  in dispute were incurred and to be performed in this County.

27

28

    {00014484}00014160                              1
                                    COMPLAINT

**PARTIES**

2.    Plaintiff Bonnie Schmidt is an individual who resides in the State of California and who was employed by Defendants in their Mountain View office from July 1, 2001 until her wrongful termination on October 31, 2006. Plaintiff is a member of a protected class and was perceived by Defendants to be a member of a protected class. Prior to her employment at Defendants' Mountain View office, Plaintiff had been employed by Defendants since September 1988 at offices in Florida, Connecticut, Santa Clara, California, New Jersey and North Carolina.

3.    Defendant Siemens Medical Solutions USA, Inc. is a Delaware corporation with an office in Mountain View, California, and which employs more than five employees. On information and belief, Plaintiff alleges that Siemens Medical Solutions USA, Inc. is owned and controlled by Defendant Siemens Corporation, a New York corporation with more than five employees.

4.    Defendant Siemens AG is a German public stock corporation with headquarters in Munich and Berlin, Germany, and which employs more than 460,000 employees worldwide. On information and belief, Plaintiff alleges that Siemens Corporation is owned and controlled by Defendant Siemens AG.

5.    Defendant Bjoern Fischer is an individual residing in California, is a citizen of California, and during the relevant time frame was a supervisor and/or managing agent of Defendants.

6.    Defendant Holger Liebel, during all times relevant to the complaint, was an individual residing in California, a citizen of California, and a supervisor and/or managing agent of Defendants. The corporate defendants, along with Fischer and Liebel, are referred to jointly as "Siemens" or "Defendants."

7.    Plaintiff does not know the true names and capacities, whether individual, partners or corporate, or otherwise, of the Defendants sued as DOES 1 through 20, inclusive, and for that reason said Defendants are sued herein under such fictitious names, and Plaintiff prays leave to amend this Complaint when the true names and capacities are known. Plaintiff is informed and believes and thereupon alleges that DOES 1 through 20 are responsible, individually and collectively, for the injuries to Plaintiff alleged herein.

8.    On information and belief, Plaintiff alleges that, except as otherwise stated herein, at

{00014484}00014160

2

COMPLAINT

The Davis Law Firm
825 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

1    all times herein mentioned, each DOE Defendant participated in the doing of the acts herein alleged to

2    have been done by the named Defendants, and furthermore, the DOE Defendants, and each of them,

3    were the agents, servants and employees of each of the other Defendants, as well as the agents of the

4    other Defendants, and at all times herein mentioned were acting within the course and scope of said

5    agency and employment.

6         9.    Plaintiff is informed and believes and thereupon alleges that except as otherwise

7    stated herein, at all times herein mentioned, the acts and omissions of the various Defendants, and each

8    of them, concurred and contributed to the various acts and omissions of each and all of the other

9    Defendants in proximity causing the injuries and damages as herein alleged.

10        10.    Plaintiff is informed and believes and thereupon alleges that except as otherwise

11   stated herein, at all times herein mentioned, Defendants, and each of them, ratified each and every act or

12   omission complained of herein.

13                 **FACTS COMMON TO ALL CAUSES OF ACTION**

14        11.    In September 1988 Plaintiff joined Defendants' Siemens Information Systems

15   ("SIS") in Boca Raton, Florida, as Assistant Controller. She was hired by Dieter Diehn, the Chief

16   Financial Officer and Executive Vice President of SIS and reported to Winfred Sirringhaus, the SIS

17   Controller. Plaintiff was responsible for managing the on-going financial activities of SIS including,

18   but not limited to, financial accounting, monthly reporting, payroll, tax matters, accounts receivable and

19   payable, inventory valuation, and audit management. Speaking, understanding and/or reading German

20   were not required for Plaintiff's Assistant Controller position, nor was Plaintiff told that she would need

21   to acquire German language skills to be employed by Defendants.

22        12.    In January 1990, Plaintiff received an overall performance evaluation of "Above

23   Average" (the second highest designation) for her work as Assistant Controller at SIS. SIS rewarded

24   Plaintiff with a monetary bonus in November 1991 for her outstanding performance.

25        13.    In December 1991, Plaintiff was invited by Dieter Diehn, who was now Rolm

26   Company's EVP and CFO, to join Rolm Company ("Rolm"), a joint venture between IBM and Siemens

27   with offices in Norwalk, Connecticut, with Plaintiff working as a member of the finance team. In June

28   1992, Plaintiff assumed the responsibilities of Director of Accounting at Rolm, and was responsible for

{00014484}00014150                          3
                                        COMPLAINT

The Davis Law Firm
A Professional Law Corporation
625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

1  managing the on-going financial activities of Rolm including financial accounting, monthly reporting,
2  payroll, tax matters, accounts receivable and payable, inventory valuation, and audit management.
3  Speaking, understanding and/or reading German were not required for Plaintiff's Director of
4  Accounting position, nor was Plaintiff told that she would need to acquire German language skills to be
5  employed by Defendants.

6       14.    During 1993 and 1994, Rolm Company changed its name to Siemens Rolm and
7  Plaintiff began reporting to Siemens Rolm's VP and Controller. Also during this same period, Plaintiff
8  received bonuses totaling $25,000 for successfully consolidating the accounting functions at Siemens
9  Rolm with Defendants' existing accounting processes, and for merging Siemens Rolm's manufacturing
10  and sales financial systems.

11       15.    In June 1996, Plaintiff was named the Director of Audit at Siemens Rolm and
12  reported to a German male named "Hans," who was the Vice President of Audit for Siemens
13  Telecommunications Group. In this role Plaintiff was responsible for auditing company processes,
14  internal financial controls, and working with management to improve internal financial controls and
15  processes. Speaking, understanding and/or reading German were not required for Plaintiff's VP of
16  Audit position, nor was Plaintiff told that she would need to acquire German language skills to be
17  employed by Defendants.

18       16.    At the suggestion of management, Plaintiff applied for and ultimately accepted a
19  position as Vice President and Controller for Siemens Medical Solutions, Inc. ("SMS") in Iselin, New
20  Jersey in June 1998. SMS was allegedly one of the most monetarily successful Siemens companies at
21  the time, and Plaintiff reasonably considered the Vice President title and corresponding salary increase
22  as a significant promotion. In this position Plaintiff was responsible for financial activities within all
23  SMS divisions including internal control compliance, consolidated monthly financial reporting,
24  coordinating annual budgets, foreign currency hedging, and audit management. Speaking,
25  understanding and/or reading German were not required for Plaintiff's VP & Controller position, nor
26  was Plaintiff told that she would need to acquire German language skills to be employed by Defendants

27       17.    In February 1999, Plaintiff received an overall performance evaluation of "6" (out of
28  7) for her work as VP and Controller at SMS. Reinhard Benditte, SMS' EVP and CFO, conducted the

{00014484}00014160                                4

625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401
The David Law Firm

1  evaluation.

2      18.    At the suggestion of Gerald Wright, who was the CFO of Siemens Corporation,
3  Plaintiff applied for and ultimately accepted a position as VP and CFO for Siemens Power
4  Transmission and Distribution USA ("SPTD") in Raleigh, North Carolina in August 1999. Plaintiff
5  was responsible for financial activities within SPTD associated with sales and service functions,
6  research and development projects, customer contracts, target agreements with other Siemens divisions,
7  including annual budgeting, financial forecasting and results reporting, risk management, structuring
8  business transactions so as to comply with IRS and German tax requirements, interactions with and
9  reports for the SPTD Board of Directors, and management of financial support activities such as
10  payroll, payables and purchasing. Speaking, understanding and/or reading German were not required
11  for Plaintiff's VP & CFO position, nor was Plaintiff told that she would need to acquire German
12  language skills to be employed by Defendants.

13      19.    In November 1999, just three months after joining SPTD, Plaintiff's salary was
14  increased by fifteen point five percent (15.5%) to $170,000. (Despite the increase, on information and
15  belief, it appears that Plaintiff's salary was below the midrange salary for comparable VP and
16  Controller positions within Defendants' companies, this despite consistently positive performance
17  evaluations during her 11 years of employment with Defendants.)

18      20.    In November 2000, Plaintiff's salary was increased by 7.5 percent.

19      21.    In July 2001, Plaintiff joined the Ultrasound division of SMS in Mountain View,
20  California, as Vice President of Financial Integration, and reported to Roland Jaksch, Vice President
21  and CFO. She considered her new position a lateral, rather than vertical, move in Defendants'
22  corporate structure, and her salary remained the same as when she was with SPTD. Her duties included
23  integrating Ultrasound's financial processes into SMS and managing the ongoing business activities of
24  financial budgeting, planning, reporting and auditing for Ultrasound's U.S. operations. Speaking,
25  understanding and/or reading German were not required for Plaintiff's VP Integration position, nor was
26  Plaintiff told that she would need to acquire German language skills to be employed by Defendants.

27      22.    After three months at Ultrasound, Plaintiff's salary was increased by 4.5 percent.

28      23.    In May 2002, Karl Blaim, a 30-something German male, replaced Roland Jaksch as

{00014484}00014160                    5
                          COMPLAINT

1 | Ultrasound's CFO.

2     24.   In July 2002, Plaintiff was named the Vice President-Finance and Controller of
3 Ultrasound. She replaced Tom Morris, who Plaintiff believes had been fired by Karl Blaim. Plaintiff's
4 duties were wide-ranging and included monthly accounting and reports, annual budgeting, financial
5 management of numerous departments, audit management, preparing financial statement, merging
6 financial processes between divisions within SMS, and Sarbanes-Oxley compliance. She was also told
7 that she would soon take over worldwide reporting and forecasting responsibilities from Ann Custin,
8 who would be transferring to another SMS division. Plaintiff wanted to assume Ms. Custin's
9 responsibilities because the Ultrasound division was one of the few, if only, Siemens divisions to be
10 headquartered outside of Germany and had direct interaction with Siemens management at the highest
11 levels. Plaintiff believed assuming these responsibilities as VP-Finance and Controller was going to be
12 a key move upward in her career with Defendants. Speaking, understanding and/or reading German
13 were not required for Plaintiff's VP & Controller position, nor was Plaintiff told that she would need to
14 acquire German language skills to be employed by Defendants.

15     25.   In about August 2003, Plaintiff was embarrassed and shocked to learn that the
16 responsibilities held by Ann Custin were not to be given to Plaintiff but were instead going to Holger
17 Liebel, a 30-something male German national, who was to transfer from Germany to the Mountain
18 View office. Plaintiff complained about the situation to Barbara Grote, Ultrasound's Vice President of
19 Human Resources, and Karl Blaim, but was offered no explanation or solution.

20     26.   In July 2004, Plaintiff took short-term disability leave after being diagnosed with
21 breast cancer. Plaintiff informed Liebel and Karl Blaim, among others, of her disability, among others.
22 Plaintiff returned to work part-time in November 2004, and full-time in January 2005.

23     27.   In May 2005, just a few months after returning from disability leave, Plaintiff
24 received written notice from Defendants that her job title was being change to Director-Finance, that her
25 salary was being reduced by nine point one percent (9.1 %), that her car allowance of $1200 per month
26 was being taken away, that her short-term incentive compensation plan opportunity was being reduced
27 to 20% (from 35%), that her long-term incentive compensation plan was being eliminated, and that she
28 would receive no future stock option and/or stock appreciation awards. Despite the job title change, her

{00014484}00014160      6

1    job responsibilities were not changed.

2        28.    When Plaintiff complained to Blaim about the changes to her job title and

3    compensation, he told Plaintiff that the changes to Plaintiff's status were the result of SMS allegedly

4    reevaluating all management positions and their corresponding compensation levels. However, on

5    information and belief, during this process Holger Liebel's title was changed from VP to Senior

6    Director (rather than changed to "Director" like Plaintiff), his salary increased, and his incentive

7    compensation plans remained unchanged and he continued to receive stock option grants and/or stock

8    appreciation rights. In response to Plaintiff's complaints about this, Liebel noted that while he

9    understood the changes had a negative impact on Plaintiff (and Defendants' other American

10   employees), his American title was not as important as his title in the "German system," which

11   apparently was unchanged. In other words, Liebel still had Vice President status in Germany, while

12   Plaintiff no longer did. Plaintiff was stunned, angry and upset by the apparent disparate treatment she

13   received as compared to Liebel, a 30-something German male. Plaintiff was demoralized and suffered

14   anxiety, sleeplessness and embarrassment about her job to this day.

15       29.    In December 2005, Plaintiff received a performance evaluation by Karl Blaim,

16   Ultrasound's Vice President and CFO. Plaintiff was rated a "4" (out of 5) in 3 out of 4 achievement

17   categories, yet strangely received an overall achievement rating of only "3." Plaintiff rated a "3" in 5

18   capability categories and received an overall capabilities rating of "3." Plaintiff was also credited with

19   being "instrumental in reorganization of Finance organization . . ."

20       30.    Around March 2006, Bjoern Fischer, a male German national, replaced Karl Blaim

21   as Ultrasound's CFO.

22       31.    On May 19, 2006, Fischer orally told Plaintiff that her Director position would be

23   eliminated effective October 31, 2006. Fischer explained that there was a need for managerial change

24   at Ultrasound due to general business conditions and challenges. He suggested that she: (1) take a

25   severance package; (2) apply for a Performance Controller ("PC") position within Ultrasound; or (3)

26   apply for another position within Siemens. Fischer also said that he hoped Plaintiff would continue

27   working until October 31, which Plaintiff interpreted to mean Fischer did not intend to consider her for

28   the PC or any other open position with Siemens.

{00014484}00014160                               7
                                            COMPLAINT

1    32.    Plaintiff told Fischer that taking a position in an office other than Mountain View

2 was not a viable option because she needed to stay in the area to continue ongoing cancer treatment (the

3 need for which was known by Defendants).

4    33.    Plaintiff was told by Ozlem Bulut, SMS's Human Resource Manager, that Plaintiff

5 would be considered for all open finance-related positions within SMS. At the time, the open finance

6 positions included the PC position, at least two R&D Engineering financial positions, and a Sales

7 finance position. Bulut also told Plaintiff to notify Fischer of her desire to be considered for the PC

8 position, which Plaintiff immediately did. Several weeks later, on June 7, 2006, Plaintiff was

9 interviewed for, she believed, all open finance positions, in accordance with Bulut's promise that

10 Defendants would consider her for all such open positions. Those interviewing Plaintiff included

11 Fischer, Bulut, Liebel (who admitted he was evaluating candidates for all the open positions, including

12 the PC, R&D and Sales positions) and Klaus Hambuchen, the CEO of the SMS Ultrasound Division.

13 During the interview, Liebel told Plaintiff that she could "definitely handle the [PC] job" because

14 Plaintiff had previously carried out at least 75% of the PC job responsibilities.

15    34.    On June 15, 2006, Fischer told Plaintiff that the Ultrasound PC position was going to

16 Stephan Mueller, a 30-something German national male. When Plaintiff complained to Fischer and

17 asked why Mueller was chosen instead of her, Fischer offered only that Mueller had experience in

18 Germany doing PC job duties and that the decision was "nothing personal." Later that day, Bulut told

19 Plaintiff that Liebel, not Fischer, had made the decision to hire Mueller. On information and belief,

20 Plaintiff alleges that the interview process was a sham because, among other things, none of the

21 interviewers took notes, few were qualified to interview her and none posed questions (or any questions

22 at all for that matter) about Plaintiff's abilities. Plaintiff further alleges, on information and belief, that

23 Liebel or others in Defendants' German headquarters made the decision to hire Mueller before Plaintiff

24 was interviewed.

25    35.    Liebel, who knew that Plaintiff had ongoing cancer treatments and recently had taken

26 disability leave due to cancer, did not deny that he hired Mueller instead of Plaintiff, but

27 paternalistically and disingenuously attempted to temper his response to Plaintiff by stating that she

28 should not want the PC position because Ultrasound was going through terrible times and it would not

{00014484}00014169                    8
                                  COMPLAINT

1  be a good place to work in the future. Liebel stated if anyone knew he was describing Ultrasound in
2  such negative terms, he would be fired.

3      36.    The two R&D Engineering positions were filled by two 30-something men who, by
4  all objective criteria, were far less experienced and able than Plaintiff. Plaintiff believed she had
5  interviewed for the positions because Defendants had told her they were considering her for all open
6  positions, but Plaintiff was shocked to hear Fischer state that he allegedly did not even consider her for
7  the R&D Engineering positions because she had not applied online (which never had been a
8  requirement during Plaintiff's entire career and which no one suggested, instructed or asked her to do).
9  When Plaintiff informed Fischer of Defendants' promise that they were considering Plaintiff for all
10  open financial positions, Fischer feigned ignorance of Defendants' promise. The Sales finance position,
11  like the PC position, was filled by a younger German male.

12      37.    On October 20, 2006, Plaintiff received written notice verifying that her position
13  with Defendants was being eliminated effective October 31, 2006. Plaintiff's last day working for
14  Defendants was October 31, 2006.

## FIRST CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Against The Corporate Defendants)

17      38.    Plaintiff hereby incorporates paragraphs 1 through 37 as though fully set forth herein.

18      39.    It is the public policy of the State of California to prohibit employees from
19  termination of their employment if such termination violates the Fair Employment and Housing Act
20  ("FEHA"). Termination based on her sex, gender, age, national origin or ancestry, medical condition,
21  and/or a record or history of cancer is a violation of FEHA.

22      40.    Plaintiff was discriminated against and harassed by her employer, Defendants, based
23  upon her sex, gender, age, national origin or ancestry and/or medical condition, as alleged above, and
24  her termination from Defendants was based on her sex, gender, age, national origin or ancestry, medical
25  condition, and/or a record or history of cancer.

26      41.    It is the public policy of the State of California to prohibit employees from
27  termination of their employment if such termination is motivated by the employee's complaints about
28  employer's unfair labor practices and violations of the Labor Code, as alleged above. Termination

{00014484}00014160                    9
                              COMPLAINT

1    based on an employee's protected activity in complaining about an employer's unfair labor practices and
2    violations of the Labor Code is a violation of public policy.

3         42.    Plaintiff is informed and believes she was terminated based on her inquiries,
4    questions and complaints about her demotion from VP to Director, reduction in compensation, the
5    under-40-year-old men (and German men) receiving the available finance-related positions (including
6    but not limited to the vice president and director-level jobs with Defendants, the PC and Sales finance
7    positions and R&D Engineering positions), about not being considered and/or selected for open position
8    with Defendants because of her sex, gender, age, national origin or ancestry, medical condition, and/or
9    a record or history of cancer, and because of her complaints about other unlawful conduct of
10   Defendants, as alleged above.

11        43.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has
12   suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and
13   discomfort, all to Plaintiff's damage in an amount in excess of the minimum jurisdiction of this court,
14   the precise amount to be proven at trial.

15        44.    Defendants committed the acts herein alleged maliciously, fraudulently, and
16   oppressively with wrongful intention of injuring Plaintiff, and acted with an improper and evil motive
17   amounting to malice, in a conscious disregard for Plaintiff's rights. Because the acts taken towards
18   Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous and
19   intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive
20   damages in an amount according to proof.

21        WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

22                    **SECOND CAUSE OF ACTION**
                      **EMPLOYMENT DISCRIMINATION**
23              **(CAL. GOV. CODE §§ 12940 ET SEQ.)**
                    **(Against The Corporate Defendants)**
24

25        45.    Plaintiff hereby incorporates paragraphs 1 through 44 as though fully set forth herein
26        46.    At all times herein mentioned, California Government Code §§ 12940 et seq., was in
27   full force and effect and was binding upon Defendants. Said sections require Defendants to refrain
28   from discriminating against an employee on the basis of sex, gender, age, national origin or ancestry,

{00014484}00014160                          10
                                         COMPLAINT

*(left margin, rotated)* 625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

1   medical condition, and/or a record or history of cancer, among other things. Within the time provided
2   by law, Plaintiff made complaints to the California Department of Fair Employment and Housing
3   (DFEH), and right-to-sue notices were issued.

4          47.     Throughout her employment with Defendants, Plaintiff has been subjected to
5   continuous discriminatory treatment on the basis of her sex, gender, age, national origin or ancestry,
6   medical condition, and/or a record or history of cancer. Plaintiff alleges that similarly-situated males
7   under the age of 40, persons of Germanic nationality and/or cancer-free individual employees were not
8   subjected to the same treatment.

9          48.     Defendants violated California Government Code § 12940 by discriminating against
10  Plaintiff based on her sex, gender, age, national origin or ancestry, medical condition, and/or a record or
11  history of cancer. Specifically, Plaintiff was subjected to disparate treatment by Defendants when
12  Defendants: demoted from VP to Director and had her compensation reduced; replaced Plaintiff in her
13  work responsibilities by less experienced, younger men (German men as well); denied Plaintiff
14  opportunities for employment due to prior medical treatments, cancer, and a record or history of cancer;
15  denied Plaintiff opportunities for employment due to her being a female over the age of 40; terminated
16  Plaintiff from employment, as described above; and retaliated against Plaintiff for complaining about
17  the unlawful conduct Plaintiff experienced.

18         49.     Plaintiff is informed, believes, and thereon alleges that Defendants' actions were
19  entirely or partially based on Plaintiff's sex, gender, age, national origin or ancestry, medical condition,
20  and/or a record or history of cancer.

21         50.     California Government Code § 12940 requires an employer to take all reasonable
22  steps necessary to prevent discrimination from occurring.

23         51.     Plaintiff is informed and believes that Defendants: (a) had an ineffective policy
24  regarding discrimination; (b) had no effective procedure for addressing or investigating complaints of
25  discrimination; (c) failed to effectively implement any procedure it may have had for investigating
26  complaints of discrimination; (d) did not adequately investigate Plaintiff's complaints; and (e) failed to
27  appropriately train its employees concerning discrimination. Defendants knew or should have known
28  about the discriminating conduct toward Plaintiff, an American woman in her 50's, and were remiss in

The Davis Law Firm
625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

1    failing to take immediate and appropriate corrective action. Defendants are also strictly liable for the

2    conduct of its supervisors.

3        52.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has

4    suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and

5    discomfort, all to Plaintiff's damage in an amount in excess of the minimum jurisdiction of this court,

6    the precise amount to be proven at trial.

7        53.    Defendants committed the acts herein alleged maliciously, fraudulently, and

8    oppressively with wrongful intention of injuring Plaintiff, and acted with an improper and evil motive

9    amounting to malice, in a conscious disregard for Plaintiff's rights. Because the acts taken towards

10   Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous and

11   intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive

12   damages in an amount according to proof.

13       WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

14                    **THIRD CAUSE OF ACTION**
                         **RETALIATION**
15               **(CAL. GOV. CODE §§ 12940 ET SEQ.)**
                 **(Against All Defendants and Does 1-20)**
16

17       54.    Plaintiff hereby incorporates paragraphs 1 through 53 as though fully set forth herein.

18       55.    At all times herein mentioned, California Government Code §§ 12940 et seq., was in

19   full force and effect and was binding upon Defendants. Said sections require Defendants to refrain

20   from retaliating against an employee for complaining about unlawful discrimination and unlawful labor

21   practices, among other things. Within the time provided by law, Plaintiff made complaints to the

22   California Department of Fair Employment and Housing (DFEH), and right-to-sue notices were issued.

23       56.    After Plaintiff disclosed that she had previously been treated for cancer and required

24   continuing treatment and had a history and record of cancer, she engaged in protected activity in taking

25   leave to treat cancer and in continuing her treatments and monitoring for cancer, and in complaining

26   about the treatment she experienced as alleged above, including but not limited to her belief that non-

27   German women over the age of 40 were unfairly denied access to promotions and certain job titles, as

28   alleged above. Defendants unlawfully retaliated against Plaintiff in the manner described above.

{00014484}00014160                    12

1    57.    Plaintiff experienced adverse employment actions in the form of Defendants'
2  decisions to reduce Plaintiff's compensation and demote her from VP to Director, terminate Plaintiff's
3  employment without cause, deny her employment opportunities, deny her stock options and other
4  monetary benefits, and cause public humiliation, as alleged above.

5    58.    Plaintiff is informed, believes, and thereon alleges that in addition to the practices
6  enumerated in this cause of action, Defendants have engaged in other retaliatory practices that are not
7  fully known by Plaintiff.

8    59.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has
9  suffered humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiff's
10  damages in an amount in excess of the minimum jurisdiction of this court, the precise amount to be
11  proven at trial.

12    60.    Defendants committed the acts herein alleged maliciously, fraudulently, and
13  oppressively with wrongful intention of injuring Plaintiff, and acted with an improper and evil motive
14  amounting to malice, in a conscious disregard for Plaintiff's rights. Because the acts taken towards
15  Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous and
16  intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive
17  damages in an amount according to proof.

18    WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

19    **FOURTH CAUSE OF ACTION**
    **BREACH OF CONTRACT**
20    **(Against The Corporate Defendants)**

21    61.    Plaintiff incorporates by reference Paragraphs 1 through 60, inclusive, as though set
22  forth here in full.

23    62.    Plaintiff and Defendants and DOES 1-20 entered into an employment contract on or
24  about 1988 and during the lengthy term of Plaintiff's employment. The contract was oral, written and
25  implied-in-fact. The basic terms of the agreement provided that Plaintiff's employment would be secur
26  for as long as her performance was satisfactory, that Plaintiff would not be terminated without good
27  cause, and that Plaintiff would earn agreed-upon wages and fringe benefits.

28    63.    Plaintiff undertook and continued employment and duly performed all of the

{00014484}00014160                    13
                          COMPLAINT

1   conditions of the employment agreement to be performed by her until prevented by Defendants from

2   further performance. Plaintiff had, at all times, been ready, willing and able to perform all of the

3   conditions of the agreement to be performed by her.

4          64.    On or about October 20, 2006, Defendants and DOES 1-20 breached the oral, written

5   and implied-in-fact employment agreement by discharging Plaintiff without good cause, in violation of

6   the law as alleged above, and despite her continued satisfactory performance.

7          65.    Plaintiff suffered damages legally caused by the breach of contract in an amount to

8   be proven at trial.

9                                  **PRAYER FOR RELIEF**

10  WHEREFORE, Plaintiff demands judgment against all Defendants as follows:

11         a.     That Plaintiff recover judgment against Defendants in an amount to be determined at trial

12  as general, special, actual, compensatory and/or nominal damages;

13         b.     That Plaintiff recover judgment against Defendants for punitive damages in an amount to

14  be determined at trial sufficient to punish, penalize and/or deter Defendants;

15         c.     That Plaintiff recover judgment against Defendants in an amount to be determined at trial

16  for expenses of this litigation, including, but not limited to, reasonable attorneys' fees as provided by th

17  FEHA and Labor Code;

18         d.     That Plaintiff recover prejudgment and post-judgment interest; and

19         e.     That Plaintiff have such other relief as this Court deems just and appropriate.

20  Dated: August 9, 2007                          THE DAVIS LAW FIRM

21
                                                   By:
22                                                     TIMOTHY C. DAVIS
                                                       Attorneys for Plaintiff Bonnie Schmidt
23

24  **JURY TRIAL DEMAND**

25  Plaintiff demands trial by jury.

26  Dated: August 9, 2007                          THE DAVIS LAW FIRM

27
                                                   By:
28                                                     TIMOTHY C. DAVIS
                                                       Attorneys for Plaintiff Bonnie Schmidt

{00014484}00014160                          14
                                          COMPLAINT

EXHIBIT 2

CIV-110

| | | |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*<br>Elisa R. Aldecoa (SBN 210516)<br>THE DAVIS LAW FIRM, APC<br>625 MARKET STREET, 12TH FLOOR<br><br>SAN FRANCISCO, CA 94105 | TELEPHONE NO.: | FOR COURT USE ONLY<br><br>FILED<br><br>2008 FEB 11  PM 3:08<br><br>KIRI TORRE<br>CHIEF EXEC. OFFICER/CLERK<br>SUPERIOR COURT OF CA<br>COUNTY OF SANTA CLARA<br><br>M. Rosales |

ATTORNEY FOR *(Name):*    PLAINTIFF BONNIE SCHMIDT

Insert name of court and name of judicial district and branch court, if any:

SUPERIOR COURT, County of Santa Clara

PLAINTIFF/PETITIONER: BONNIE SCHMIDT

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **REQUEST FOR DISMISSAL**<br>☐ Personal Injury, Property Damage, or Wrongful Death<br>   ☐ Motor Vehicle   ☐ Other<br>☐ Family Law<br>☐ Eminent Domain<br>☒ Other *(specify):* wrongful termination, discrimination, retaliation | CASE NUMBER:<br>107CV091780<br><br>UCS |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) ☐ With prejudice    (2) ☒ Without prejudice
   b. (1) ☐ Complaint    (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name):*                    on *(date):*
      (4) ☐ Cross-complaint filed by *(name):*                    on *(date):*
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other *(specify):* Complaint ONLY as to Defendant Semens AG.

**BY FAX**

Date: February 11, 2008

Elisa R. Aldecoa (SBN 210516)
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶ *(SIGNATURE)*
Attorney or party without attorney for:

\* If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross - complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.\*\*
   Date:

   ▶

   (TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)    *(SIGNATURE)*
   Attorney or party without attorney for:

   \*\* If a cross-complaint or Response (Family Law) seeking affirmative relief -is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

   ☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
   ☐ Cross - complainant

*(To be completed by clerk)*
3. ☒ Dismissal entered as requested on *(date):* FEB 11 2008
4. ☐ Dismissal entered on *(date):*                    as to only *(name):*
5. ☐ Dismissal not entered as requested for the following reasons *(specify):*

6. ☒ a. Attorney or party without attorney notified on *(date):* FEB 11 2008
      b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
         ☐ a copy to conform    ☐ means to return conformed copy

M. Rosales   **KIRI TORRE**

Date: FEB 11 2008    Clerk, by _____, Deputy

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. January 1, 2007] | **REQUEST FOR DISMISSAL**<br>Legal<br>Solutions<br>➡ Plus | Page 1 of 1<br>Code of Civil Procedure, § 581 et seq.;<br>Cal. Rules of Court, rule 3.1390 |

FILED

1

PROOF OF SERVICE

2008 FEB 11  PM 3: 09

2    The undersigned hereby declares that I am over the age of 18 years and not a party to or
interested in the within entitled cause. I am an employee of The Davis Law Firm. Affiant whose
3    business address is 625 Market Street, 12th Floor, San Francisco, California 94105. On the date stated
below, I served a true copy of:
4

J. M. Rosales

5              **REQUEST FOR DISMISSAL** +

6    ☒  By mail, by placing said document(s) in an envelope addressed as shown below. I am readily
familiar with my firm's practice for collection and processing of correspondence for mailing
7       with the United States Postal Service, to wit, that correspondence will be deposited with the
United States Postal Service this same day in the ordinary course of business. I sealed said
8       envelope and placed it for collection and mailing on the date stated below to the addressee stated
below, following ordinary business practices.
9

10   ☐  By messenger, by placing said document(s) in an envelope addressed as shown below, and
dispatching a messenger from my place of business with instructions to hand-carry the above
11      and make delivery to the following during normal business hours, by leaving a true copy thereof
with the person whose name is shown or the person who was apparently in charge of that
12      person's office or residence.

13   ☐  By facsimile transmission to the individual and facsimile number set forth below. I caused the
document(s) to be transmitted by facsimile machine to the addresses listed below at the
14      facsimile number listed below. I am readily familiar with my firm's practice for transmissions
by facsimile, to wit, transmissions are sent as soon as possible and are repeated, if necessary,
15      until they are reported as complete and without error. In sending the above described document
by facsimile, I followed my firm's ordinary business practices.
16

17   ☐  By Overnight Delivery by placing said document(s) in a sealed Overnight Delivery envelope
addressed as shown below and causing such envelope delivered by commercial carrier service
18      for overnight delivery to the addresses shown below.

19              Raymond L. Wheeler
Teresa N. Burlison
20              Morrison & Foerster LLP
755 Page Mill Road
21              Palo Alto, CA 94304

22              **Attorneys for Defendants**

23

24       I declare under penalty of perjury, under the laws of the State of California that the foregoing is
true and correct, and that this declaration was executed at San Francisco, California on January 4 2008.
25

26

27                              Cortney A. Creamer

28

{00015426}.                                        1
PROOF OF SERVICE

625 Market Street, 12th
Floor, San Francisco, CA
94105 • Telephone (415)

The Davis Law Firm.

EXHIBIT 3

1  THE DAVIS LAW FIRM, APC
   TIMOTHY C. DAVIS (SBN 60936)
2  tdavis@sfdavislaw.com
   DAMIEN P. LILLIS (SBN 191258)
3  dlillis@sfdavislaw.com
   ELISA R. ALDECOA (SBN 210516)
4  ealdecoa@sfdavislaw.com
   625 Market Street, 12th Floor
5  San Francisco, California 94105
   Telephone:   (415) 278-1400
6  Facsimile:   (415) 278-1401

7  Attorneys for Plaintiff
   BONNIE J. SCHMIDT

8

9

10              SUPERIOR COURT OF CALIFORNIA

11          IN AND FOR THE COUNTY OF SANTA CLARA

12                   UNLIMITED JURISDICTION

13

14  BONNIE J. SCHMIDT,                          Case No. 107CV091780

15              Plaintiff,                       **STIPULATION AND [PROPOSED]
                                                 ORDER REGARDING FILING OF FIRST
                                                 AMENDED COMPLAINT**
16          v.

17  SIEMENS MEDICAL SOLUTIONS USA,               Complaint Filed: August, 9, 2007
    INC., a Delaware corporation; SIEMENS
18  CORPORATION, a New York corporation;
    SIEMENS AG, a German public stock
19  corporation; BJOERN FISCHER, an individual;
    HOLGER LIEBEL, an individual; and DOES 1-
20  20,

21              Defendants.

22     Plaintiff Bonnie Schmidt ("Schmidt" and/or "Plaintiff") and Defendants Siemens Medical

23  Solutions USA, Inc., Siemens Corporation, Bjoren Fischer and Holger Liebel (collectively,

24  "Siemens" and/or "Defendants") hereby stipulate and agree by and through their respective

25  attorneys of record, as follows:

26     WHEREAS, Plaintiff filed this action on August 9, 2007.

27     WHEREAS, Defendants filed their Answer to Plaintiff's Complaint on October 12, 2007.

28     WHEREAS, all parties in this action, through their counsel, agree that an amendment to the

{00017475}                                       1

STIPULATION AND [PROPOSED] ORDER REGARDING FILING OF FIRST AMENDED COMPLAINT

(margin text, left side, rotated:)
625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone (415) 94105

The Davis Law Firm

1 | Complaint is appropriate and that such amendment would be accomplished by was of this Stipulation

2 | and [Proposed] Order. The only revision from the original Complaint is the addition of a new

3 | paragraph 52, page 12, lines 3 through 7, which is attached hereto as Exhibit 1.

4 |     NOW THEREFORE, the parties agree, by and through their respective counsel of record, that

5 | Plaintiff may file a First Amended Complaint, which is attached hereto as Exhibit 1, and that

6 | Defendants' Answer to the Original Complaint shall be deemed the Answer to Plaintiff's First

7 | Amended Complaint.

8 |     IT IS SO STIPULATED.

9 | DATED: March _27_, 2008         THE DAVIS LAW FIRM

10

11 |         By: _____

                Timothy C. Davis, Esq.

                Damien P. Lillis, Esq.

12 |                 Elisa R. Aldecoa, Esq.

13 |                 Attorneys for Plaintiff BONNIE SCHMIDT

14 | DATED: March _26_, 2008         MORRISON & FOERSTER LLP

15

16 |         By: _____

                Raymond L. Wheeler, Esq.

17 |                 Teresa N. Burlison, Esq.

                Attorneys for Defendants SIEMENS MEDICAL

18 |                 SOLUTIONS USA, INC., SIEMENS

                CORPORATION, BJOREN FISCHER and

19 |                 HOLGER LIEBEL

20 |                 ORDER

21 |     THE FOREGOING STIPULATION IS APPROVED. Plaintiff Bonnie Schmidt may file the

22 | First Amended Complaint referenced above.

23 |     IT IS SO ORDERED.

24 | Dated:     MAR 2 8 2008         Mary Jo Levinger

25

26 |                 Judge of the Santa Clara Superior Court

27

28

{00017475}              2

STIPULATION AND [PROPOSED] ORDER REGARDING FILING OF FIRST AMENDED COMPLAINT

*Sidebar (vertical text):* The Davis Law Firm 345 Fifth Floor   625 Market Street, Fifth Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

EXHIBIT 4

1   THE DAVIS LAW FIRM, APC
    TIMOTHY C. DAVIS (SBN 60936)
2   tdavis@sfdavislaw.com
    DAMIEN P. LILLIS (SBN 191258)
3   dlillis@sfdavislaw.com
    ELISA R. ALDECOA (SBN 210516)
4   ealdecoa@sfdavislaw.com
    625 Market Street, 12th Floor
5   San Francisco, California 94105
    Telephone:    (415) 278-1400
6   Facsimile:    (415) 278-1401

7   Attorneys for Plaintiff
    BONNIE J. SCHMIDT
8

9
                    SUPERIOR COURT OF CALIFORNIA
10
                IN AND FOR THE COUNTY OF SANTA CLARA
11
                        UNLIMITED JURISDICTION
12

13
    BONNIE J. SCHMIDT,                    Case No.  107CV091780
14
            Plaintiff,
15
        v.
16                                        FIRST AMENDED COMPLAINT FOR
    SIEMENS MEDICAL SOLUTIONS USA,        DAMAGES
17  INC., a Delaware corporation; SIEMENS
    CORPORATION, a New York corporation;  1.  WRONGFUL TERMINATION IN
18  SIEMENS AG, a German public stock         VIOLATION OF PUBLIC POLICY
    corporation; BJOERN FISCHER, an individual;  2.  EMPLOYMENT DISCRIMINATION
19  HOLGER LIEBEL, an individual; and DOES 1-  3.  RETALIATION
    20,                                   4.  BREACH OF IMPLIED CONTRACT
20
            Defendants.
21                                        JURY TRIAL DEMANDED

22

23
        Plaintiff Bonnie Schmidt ("Plaintiff") alleges as follows for her First Amended Complaint for
24
    Damages:
25
                        JURISDICTION AND VENUE
26
        1.    Venue is proper in this Court because one or more of the Defendants reside in Santa
27
    Clara County ("County"), many of the acts complained of occured in this County, and the obligations
28

    {0001781}                           1
    _____
                    FIRST AMENDED COMPLAINT

1    in dispute were incurred and to be performed in this County.

2                                 PARTIES

3        2.    Plaintiff Bonnie Schmidt is an individual who resides in the State of California and

4    who was employed by Defendants in their Mountain View office from July 1, 2001 until her wrongful

5    termination on October 31, 2006. Plaintiff is a member of a protected class and was perceived by

6    Defendants to be a member of a protected class. Prior to her employment at Defendants' Mountain

7    View office, Plaintiff had been employed by Defendants since September 1988 at offices in Florida,

8    Connecticut, Santa Clara, California, New Jersey and North Carolina.

9        3.    Defendant Siemens Medical Solutions USA, Inc. is a Delaware corporation with an

10   office in Mountain View, California, and which employs more than five employees. On information

11   and belief, Plaintiff alleges that Siemens Medical Solutions USA, Inc. is owned and controlled by

12   Defendant Siemens Corporation, a New York corporation with more than five employees.

13       4.    Defendant Siemens AG is a German public stock corporation with headquarters in

14   Munich and Berlin, Germany, and which employs more than 460,000 employees worldwide. On

15   information and belief, Plaintiff alleges that Siemens Corporation is owned and controlled by Defendant

16   Siemens AG.

17       5.    Defendant Bjoern Fischer is an individual residing in California, is a citizen of

18   California, and during the relevant time frame was a supervisor and/or managing agent of Defendants.

19       6.    Defendant Holger Liebel, during all times relevant to the complaint, was an

20   individual residing in California, a citizen of California, and a supervisor and/or managing agent of

21   Defendants. The corporate defendants, along with Fischer and Liebel, are referred to jointly as

22   "Siemens" or "Defendants."

23       7.    Plaintiff does not know the true names and capacities, whether individual, partners or

24   corporate, or otherwise, of the Defendants sued as DOES 1 through 20, inclusive, and for that reason

25   said Defendants are sued herein under such fictitious names, and Plaintiff prays leave to amend this

26   Complaint when the true names and capacities are known. Plaintiff is informed and believes and

27   thereupon alleges that DOES 1 through 20 are responsible, individually and collectively, for the injuries

28   to Plaintiff alleged herein.

{00017481}

                                    2
                            FIRST AMENDED COMPLAINT

8.      On information and belief, Plaintiff alleges that, except as otherwise stated herein, at all times herein mentioned, each DOE Defendant participated in the doing of the acts herein alleged to have been done by the named Defendants, and furthermore, the DOE Defendants, and each of them, were the agents, servants and employees of each of the other Defendants, as well as the agents of the other Defendants, and at all times herein mentioned were acting within the course and scope of said agency and employment.

9.      Plaintiff is informed and believes and thereupon alleges that except as otherwise stated herein, at all times herein mentioned, the acts and omissions of the various Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximity causing the injuries and damages as herein alleged.

10.     Plaintiff is informed and believes and thereupon alleges that except as otherwise stated herein, at all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.

### FACTS COMMON TO ALL CAUSES OF ACTION

11.     In September 1988 Plaintiff joined Defendants' Siemens Information Systems ("SIS") in Boca Raton, Florida, as Assistant Controller. She was hired by Dieter Diehn, the Chief Financial Officer and Executive Vice President of SIS and reported to Winfred Sirringhaus, the SIS Controller. Plaintiff was responsible for managing the on-going financial activities of SIS including, but not limited to, financial accounting, monthly reporting, payroll, tax matters, accounts receivable and payable, inventory valuation, and audit management. Speaking, understanding and/or reading German were not required for Plaintiff's Assistant Controller position, nor was Plaintiff told that she would need to acquire German language skills to be employed by Defendants.

12.     In January 1990, Plaintiff received an overall performance evaluation of "Above Average" (the second highest designation) for her work as Assistant Controller at SIS. SIS rewarded Plaintiff with a monetary bonus in November 1991 for her outstanding performance.

13.     In December 1991, Plaintiff was invited by Dieter Diehn, who was now Rolm Company's EVP and CFO, to join Rolm Company ("Rolm"), a joint venture between IBM and Seimens with offices in Norwalk, Connecticut, with Plaintiff working as a member of the finance team. In June

{00017481}

3

1    1992, Plaintiff assumed the responsibilities of Director of Accounting at Rolm, and was responsible for

2    managing the on-going financial activities of Rolm including financial accounting, monthly reporting,

3    payroll, tax matters, accounts receivable and payable, inventory valuation, and audit management.

4    Speaking, understanding and/or reading German were not required for Plaintiff's Director of

5    Accounting position, nor was Plaintiff told that she would need to acquire German language skills to be

6    employed by Defendants.

7            14.    During 1993 and 1994, Rolm Company changed its name to Siemens Rolm and

8    Plaintiff began reporting to Siemens Rolm's VP and Controller. Also during this same period, Plaintiff

9    received bonuses totaling $25,000 for successfully consolidating the accounting functions at Siemens

10   Rolm with Defendants' existing accounting processes, and for merging Siemens Rolm's manufacturing

11   and sales financial systems.

12           15.    In June 1996, Plaintiff was named the Director of Audit at Siemens Rolm and

13   reported to a German male named "Hans," who was the Vice President of Audit for Siemens

14   Telecommunications Group. In this role Plaintiff was responsible for auditing company processes,

15   internal financial controls, and working with management to improve internal financial controls and

16   processes. Speaking, understanding and/or reading German were not required for Plaintiff's VP of

17   Audit position, nor was Plaintiff told that she would need to acquire German language skills to be

18   employed by Defendants.

19           16.    At the suggestion of management, Plaintiff applied for and ultimately accepted a

20   position as Vice President and Controller for Siemens Medical Solutions, Inc. ("SMS") in Iselin, New

21   Jersey in June 1998. SMS was allegedly one of the most monetarily successful Siemens companies at

22   the time, and Plaintiff reasonably considered the Vice President title and corresponding salary increase

23   as a significant promotion. In this position Plaintiff was responsible for financial activities within all

24   SMS divisions including internal control compliance, consolidated monthly financial reporting,

25   coordinating annual budgets, foreign currency hedging, and audit management. Speaking,

26   understanding and/or reading German were not required for Plaintiff's VP & Controller position, nor

27   was Plaintiff told that she would need to acquire German language skills to be employed by Defendants.

28           17.    In February 1999, Plaintiff received an overall performance evaluation of "5" (out of

{00017481}

4

625 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 276-6400 • Facsimile: (415) 276-6401

The Dash Law Firm

1  7) for her work as VP and Controller at SMS.  Reinhard Benditte, SMS' EVP and CFO, conducted the

2  evaluation.

3        18.    At the suggestion of Gerald Wright, who was the CFO of Siemens Corporation,

4  Plaintiff applied for and ultimately accepted a position as VP and CFO for Siemens Power

5  Transmission and Distribution USA ("SPTD") in Raleigh, North Carolina in August 1999.  Plaintiff

6  was responsible for financial activities within SPTD associated with sales and service functions,

7  research and development projects, customer contracts, target agreements with other Siemens divisions,

8  including annual budgeting, financial forecasting and results reporting, risk management, structuring

9  business transactions so as to comply with IRS and German tax requirements, interactions with and

10 reports for the SPTD Board of Directors, and management of financial support activities such as

11 payroll, payables and purchasing.  Speaking, understanding and/or reading German were not required

12 for Plaintiff's VP & CFO position, nor was Plaintiff told that she would need to acquire German

13 language skills to be employed by Defendants.

14        19.    In November 1999, just three months after joining SPTD, Plaintiff's salary was

15 increased by fifteen point five percent (15.5%) to $170,000.  (Despite the increase, on information and

16 belief, it appears that Plaintiff's salary was below the midrange salary for comparable VP and

17 Controller positions within Defendants' companies, this despite consistently positive performance

18 evaluations during her 11 years of employment with Defendants.)

19        20.    In November 2000, Plaintiff's salary was increased by 7.5 percent.

20        21.    In July 2001, Plaintiff joined the Ultrasound division of SMS in Mountain View,

21 California, as Vice President of Financial Integration, and reported to Roland Jaksch, Vice President

22 and CFO.  She considered her new position a lateral, rather than vertical, move in Defendants'

23 corporate structure, and her salary remained the same as when she was with SPTD.  Her duties included

24 integrating Ultrasound's financial processes into SMS and managing the ongoing business activities of

25 financial budgeting, planning, reporting and auditing for Ultrasound's U.S. operations.  Speaking,

26 understanding and/or reading German were not required for Plaintiff's VP Integration position, nor was

27 Plaintiff told that she would need to acquire German language skills to be employed by Defendants.

28        22.    After three months at Ultrasound, Plaintiff's salary was increased by 4.5 percent.

{00017481}

5

The David Law Firm
635 Market Street, 12th Floor, San Francisco, CA 94105 • Telephone: (415) 278-1400 • Facsimile: (415) 278-1401

23.    In May 2002, Karl Blaim, a 30-something German male, replaced Roland Jaksch as Ultrasound's CFO.

24.    In July 2002, Plaintiff was named the Vice President-Finance and Controller of Ultrasound. She replaced Tom Morris, who Plaintiff believes had been fired by Karl Blaim. Plaintiff's duties were wide-ranging and included monthly accounting and reports, annual budgeting, financial management of numerous departments, audit management, preparing financial statement, merging financial processes between divisions within SMS, and Sarbanes-Oxley compliance. She was also told that she would soon take over worldwide reporting and forecasting responsibilities from Ann Custin, who would be transferring to another SMS division. Plaintiff wanted to assume Ms. Custin's responsibilities because the Ultrasound division was one of the few, if only, Siemens divisions to be headquartered outside of Germany and had direct interaction with Siemens management at the highest levels. Plaintiff believed assuming these responsibilities as VP-Finance and Controller was going to be a key move upward in her career with Defendants. Speaking, understanding and/or reading German were not required for Plaintiff's VP & Controller position, nor was Plaintiff told that she would need to acquire German language skills to be employed by Defendants.

25.    In about August 2003, Plaintiff was embarrassed and shocked to learn that the responsibilities held by Ann Custin were not to be given to Plaintiff but were instead going to Holger Liebel, a 30-something male German national, who was to transfer from Germany to the Mountain View office. Plaintiff complained about the situation to Barbara Grote, Ultrasound's Vice President of Human Resources, and Karl Blaim, but was offered no explanation or solution.

26.    In July 2004, Plaintiff took short-term disability leave after being diagnosed with breast cancer. Plaintiff informed Liebel and Karl Blaim, among others, of her disability, among others. Plaintiff returned to work part-time in November 2004, and full-time in January 2005.

27.    In May 2005, just a few months after returning from disability leave, Plaintiff received written notice from Defendants that her job title was being change to Director-Finance, that her salary was being reduced by nine point one percent (9.1 %), that her car allowance of $1200 per month was being taken away, that her short-term incentive compensation plan opportunity was being reduced to 20% (from 35%), that her long-term incentive compensation plan was being eliminated, and that she

{00017431}

6

The Davis Law Firm · 623 Market Street, 12th Floor, San Francisco, CA 94105 · Telephone: (415) 278-1400 · Facsimile: (415) 278-1401

1   would receive no future stock option and/or stock appreciation awards. Despite the job title change, her
2   job responsibilities were not changed.

3       28.     When Plaintiff complained to Blaim about the changes to her job title and
4   compensation, he told Plaintiff that the changes to Plaintiff's status were the result of SMS allegedly
5   reevaluating all management positions and their corresponding compensation levels. However, on
6   information and belief, during this process Holger Liebel's title was changed from VP to Senior
7   Director (rather than changed to "Director" like Plaintiff), his salary increased, and his incentive
8   compensation plans remained unchanged and he continued to receive stock option grants and/or stock
9   appreciation rights. In response to Plaintiff's complaints about this, Liebel noted that while he
10  understood the changes had a negative impact on Plaintiff (and Defendants' other American
11  employees), his American title was not as important as his title in the "German system," which
12  apparently was unchanged. In other words, Liebel still had Vice President status in Germany, while
13  Plaintiff no longer did. Plaintiff was stunned, angry and upset by the apparent disparate treatment she
14  received as compared to Liebel, a 30-something German male. Plaintiff was demoralized and suffered
15  anxiety, sleeplessness and embarrassment about her job to this day.

16      29.     In December 2005, Plaintiff received a performance evaluation by Karl Blaim,
17  Ultrasound's Vice President and CFO. Plaintiff was rated a "4" (out of 5) in 3 out of 4 achievement
18  categories, yet strangely received an overall achievement rating of only "3." Plaintiff rated a "3" in 5
19  capability categories and received an overall capabilities rating of "3." Plaintiff was also credited with
20  being "instrumental in reorganization of Finance organization . . ."

21      30.     Around March 2006, Bjoern Fischer, a male German national, replaced Karl Blaim
22  as Ultrasound's CFO.

23      31.     On May 19, 2006, Fischer orally told Plaintiff that her Director position would be
24  eliminated effective October 31, 2006. Fischer explained that there was a need for managerial change
25  at Ultrasound due to general business conditions and challenges. He suggested that she: (1) take a
26  severance package; (2) apply for a Performance Controller ("PC") position within Ultrasound; or (3)
27  apply for another position within Siemens. Fischer also said that he hoped Plaintiff would continue
28  working until October 31, which Plaintiff interpreted to mean Fischer did not intend to consider her for

{00017481}
7

1   the PC or any other open position with Siemens.

2       32.    Plaintiff told Fischer that taking a position in an office other than Mountain View

3   was not a viable option because she needed to stay in the area to continue ongoing cancer treatment (the

4   need for which was known by Defendants).

5       33.    Plaintiff was told by Ozlem Bulut, SMS's Human Resource Manager, that Plaintiff

6   would be considered for all open finance-related positions within SMS. At the time, the open finance

7   positions included the PC position, at least two R&D Engineering financial positions, and a Sales

8   finance position. Bulut also told Plaintiff to notify Fischer of her desire to be considered for the PC

9   position, which Plaintiff immediately did. Several weeks later, on June 7, 2006, Plaintiff was

10  interviewed for, she believed, all open finance positions, in accordance with Bulut's promise that

11  Defendants would consider her for all such open positions. Those interviewing Plaintiff included

12  Fischer, Bulut, Liebel (who admitted he was evaluating candidates for all the open positions, including

13  the PC, R&D and Sales positions) and Klaus Hambuchen, the CEO of the SMS Ultrasound Division.

14  During the interview, Liebel told Plaintiff that she could "definitely handle the [PC] job" because

15  Plaintiff had previously carried out at least 75% of the PC job responsibilities.

16      34.    On June 15, 2006, Fischer told Plaintiff that the Ultrasound PC position was going to

17  Stephan Mueller, a 30-something German national male. When Plaintiff complained to Fischer and

18  asked why Mueller was chosen instead of her, Fischer offered only that Mueller had experience in

19  Germany doing PC job duties and that the decision was "nothing personal." Later that day, Bulut told

20  Plaintiff that Liebel, not Fischer, had made the decision to hire Mueller. On information and belief,

21  Plaintiff alleges that the interview process was a sham because, among other things, none of the

22  interviewers took notes, few were qualified to interview her and none posed questions (or any questions

23  at all for that matter) about Plaintiff's abilities. Plaintiff further alleges, on information and belief, that

24  Liebel or others in Defendants' German headquarters made the decision to hire Mueller before Plaintiff

25  was interviewed.

26      35.    Liebel, who knew that Plaintiff had ongoing cancer treatments and recently had taken

27  disability leave due to cancer, did not deny that he hired Mueller instead of Plaintiff, but

28  paternalistically and disingenuously attempted to temper his response to Plaintiff by stating that she

{00017481}                                    8

1  should not want the PC position because Ultrasound was going through terrible times and it would not

2  be a good place to work in the future.  Liebel stated if anyone knew he was describing Ultrasound in

3  such negative terms, he would be fired.

4          36.    The two R&D Engineering positions were filled by two 30-something men who, by

5  all objective criteria, were far less experienced and able than Plaintiff.  Plaintiff believed she had

6  interviewed for the positions because Defendants had told her they were considering her for all open

7  positions, but Plaintiff was shocked to hear Fischer state that he allegedly did not even consider her for

8  the R&D Engineering positions because she had not applied online (which never had been a

9  requirement during Plaintiff's entire career and which no one suggested, instructed or asked her to do).

10  When Plaintiff informed Fischer of Defendants' promise that they were considering Plaintiff for all

11  open financial positions, Fischer feigned ignorance of Defendants' promise.  The Sales finance position,

12  like the PC position, was filled by a younger German male.

13          37.    On October 20, 2006, Plaintiff received written notice verifying that her position

14  with Defendants was being eliminated effective October 31, 2006.  Plaintiff's last day working for

15  Defendants was October 31, 2006.

16                              FIRST CAUSE OF ACTION
17                   WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
                              (Against The Corporate Defendants)

18          38.    Plaintiff hereby incorporates paragraphs 1 through 37 as though fully set forth herein.

19          39.    It is the public policy of the State of California to prohibit employees from

20  termination of their employment if such termination violates the Fair Employment and Housing Act

21  ("FEHA").  Termination based on her sex, gender, age, national origin or ancestry, medical condition,

22  and/or a record or history of cancer is a violation of FEHA.

23          40.    Plaintiff was discriminated against and harassed by her employer, Defendants, based

24  upon her sex, gender, age, national origin or ancestry and/or medical condition, as alleged above, and

25  her termination from Defendants was based on her sex, gender, age, national origin or ancestry, medical

26  condition, and/or a record or history of cancer.

27          41.    It is the public policy of the State of California to prohibit employees from

28  termination of their employment if such termination is motivated by the employee's complaints about an

{00017481}                                    9

1   employer's unfair labor practices and violations of the Labor Code, as alleged above. Termination

2   based on an employee's protected activity in complaining about an employer's unfair labor practices and

3   violations of the Labor Code is a violation of public policy.

4       42.    Plaintiff is informed and believes she was terminated based on her inquiries,

5   questions and complaints about her demotion from VP to Director, reduction in compensation, the

6   under-40-year-old men (and German men) receiving the available finance-related positions (including

7   but not limited to the vice president and director-level jobs with Defendants, the PC and Sales finance

8   positions and R&D Engineering positions), about not being considered and/or selected for open position

9   with Defendants because of her sex, gender, age, national origin or ancestry, medical condition, and/or

10  a record or history of cancer, and because of her complaints about other unlawful conduct of

11  Defendants, as alleged above.

12      43.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has

13  suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and

14  discomfort, all to Plaintiff's damage in an amount in excess of the minimum jurisdiction of this court,

15  the precise amount to be proven at trial.

16      44.    Defendants committed the acts herein alleged maliciously, fraudulently, and

17  oppressively with wrongful intention of injuring Plaintiff, and acted with an improper and evil motive

18  amounting to malice, in a conscious disregard for Plaintiff's rights. Because the acts taken towards

19  Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous and

20  intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive

21  damages in an amount according to proof.

22      WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

23              **SECOND CAUSE OF ACTION**
                **EMPLOYMENT DISCRIMINATION**
24          **(CAL. GOV. CODE §§ 12940 ET SEQ.)**
                **(Against The Corporate Defendants)**
25

26      45.    Plaintiff hereby incorporates paragraphs 1 through 44 as though fully set forth herein.

27      46.    At all times herein mentioned, California Government Code §§ 12940 et seq., was in

28  full force and effect and was binding upon Defendants. Said sections require Defendants to refrain

{00017481}                          -10-

1   from discriminating against an employee on the basis of sex, gender, age, national origin or ancestry,

2   medical condition, and/or a record or history of cancer, among other things. Within the time provided

3   by law, Plaintiff made complaints to the California Department of Fair Employment and Housing

4   (DFEH), and right-to-sue notices were issued.

5          47.    Throughout her employment with Defendants, Plaintiff has been subjected to

6   continuous discriminatory treatment on the basis of her sex, gender, age, national origin or ancestry,

7   medical condition, and/or a record or history of cancer. Plaintiff alleges that similarly-situated males

8   under the age of 40, persons of Germanic nationality and/or cancer-free individual employees were not

9   subjected to the same treatment.

10         48.    Defendants violated California Government Code § 12940 by discriminating against

11  Plaintiff based on her sex, gender, age, national origin or ancestry, medical condition, and/or a record or

12  history of cancer. Specifically, Plaintiff was subjected to disparate treatment by Defendants when

13  Defendants: demoted from VP to Director and had her compensation reduced; replaced Plaintiff in her

14  work responsibilities by less experienced, younger men (German men as well); denied Plaintiff

15  opportunities for employment due to prior medical treatments, cancer, and a record or history of cancer;

16  denied Plaintiff opportunities for employment due to her being a female over the age of 40; terminated

17  Plaintiff from employment, as described above; and retaliated against Plaintiff for complaining about

18  the unlawful conduct Plaintiff experienced.

19         49.    Plaintiff is informed, believes, and thereon alleges that Defendants' actions were

20  entirely or partially based on Plaintiff's sex, gender, age, national origin or ancestry, medical condition,

21  and/or a record or history of cancer.

22         50.    California Government Code § 12940 requires an employer to take all reasonable

23  steps necessary to prevent discrimination from occurring.

24         51.    Plaintiff is informed and believes that Defendants: (a) had an ineffective policy

25  regarding discrimination; (b) had no effective procedure for addressing or investigating complaints of

26  discrimination; (c) failed to effectively implement any procedure it may have had for investigating

27  complaints of discrimination; (d) did not adequately investigate Plaintiff's complaints; and (e) failed to

28  appropriately train its employees concerning discrimination. Defendants knew or should have known

{00017480}                                       11

1   about the discriminating conduct toward Plaintiff, an American woman in her 50's, and were remiss in

2   failing to take immediate and appropriate corrective action. Defendants are also strictly liable for the

3   conduct of its supervisors.

4           52.    Plaintiff is informed and believes that Defendants had a policy, practice or job

5   requirement, which on its face did not mention a discriminatory factor such as sex, gender, age,

6   disability, national origin or ancestry, medical condition, and/or a record or history of cancer but

7   nonetheless had a disparate statistical impact on its employees, including Plaintiff, an American woman

8   in her 50's who had a record or history of prior medical treatments, leaves of absence and cancer.

9           53.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has

10   suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and

11   discomfort, all to Plaintiff's damage in an amount in excess of the minimum jurisdiction of this court,

12   the precise amount to be proven at trial.

13           54.    Defendants committed the acts herein alleged maliciously, fraudulently, and

14   oppressively with wrongful intention of injuring Plaintiff, and acted with an improper and evil motive

15   amounting to malice, in a conscious disregard for Plaintiff's rights. Because the acts taken towards

16   Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous and

17   intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive

18   damages in an amount according to proof.

19       WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

20                   **THIRD CAUSE OF ACTION**
                            **RETALIATION**

21          **(CAL. GOV. CODE §§ 12940 ET SEQ.)**
                **(Against All Defendants and Does 1-20)**

22

23           55.    Plaintiff hereby incorporates paragraphs 1 through 53 as though fully set forth herein.

24           56.    At all times herein mentioned, California Government Code §§ 12940 et seq., was in

25   full force and effect and was binding upon Defendants. Said sections require Defendants to refrain

26   from retaliating against an employee for complaining about unlawful discrimination and unlawful labor

27   practices, among other things. Within the time provided by law, Plaintiff made complaints to the

28   California Department of Fair Employment and Housing (DFEH), and right-to-sue notices were issued.

{00917481}

*(left margin, vertical)* The Davis Law Firm • Telephone: (415) 278-1401 • Facsimile: (415) 278-1401
625 Market Street, 12th Floor, San Francisco, CA 94105

1    57.   After Plaintiff disclosed that she had previously been treated for cancer and required

2  continuing treatment and had a history and record of cancer, she engaged in protected activity in taking

3  leave to treat cancer and in continuing her treatments and monitoring for cancer, and in complaining

4  about the treatment she experienced as alleged above, including but not limited to her belief that non-

5  German women over the age of 40 were unfairly denied access to promotions and certain job titles, as

6  alleged above. Defendants unlawfully retaliated against Plaintiff in the manner described above.

7    58.   Plaintiff experienced adverse employment actions in the form of Defendants'

8  decisions to reduce Plaintiff's compensation and demote her from VP to Director, terminate Plaintiff's

9  employment without cause, deny her employment opportunities, deny her stock options and other

10 monetary benefits, and cause public humiliation, as alleged above.

11   59.   Plaintiff is informed, believes, and thereon alleges that in addition to the practices

12 enumerated in this cause of action, Defendants have engaged in other retaliatory practices that are not

13 fully known by Plaintiff.

14   60.   As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has

15 suffered humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiff's

16 damages in an amount in excess of the minimum jurisdiction of this court, the precise amount to be

17 proven at trial.

18   61.   Defendants committed the acts herein alleged maliciously, fraudulently, and

19 oppressively with wrongful intention of injuring Plaintiff, and acted with an improper and evil motive

20 amounting to malice, in a conscious disregard for Plaintiff's rights. Because the acts taken towards

21 Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous and

22 intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive

23 damages in an amount according to proof.

24   WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

25       **FOURTH CAUSE OF ACTION**
         **BREACH OF CONTRACT**
26       (Against The Corporate Defendants)

27   62.   Plaintiff incorporates by reference Paragraphs 1 through 60, inclusive, as though set

28 forth here in full.

{00017481}                        13
                    FIRST AMENDED COMPLAINT

63.    Plaintiff and Defendants and DOES 1-20 entered into an employment contract on or about 1988 and during the lengthy term of Plaintiff's employment. The contract was oral, written and implied-in-fact. The basic terms of the agreement provided that Plaintiff's employment would be secure for as long as her performance was satisfactory, that Plaintiff would not be terminated without good cause, and that Plaintiff would earn agreed-upon wages and fringe benefits.

64.    Plaintiff undertook and continued employment and duly performed all of the conditions of the employment agreement to be performed by her until prevented by Defendants from further performance. Plaintiff had, at all times, been ready, willing and able to perform all of the conditions of the agreement to be performed by her.

65.    On or about October 20, 2006, Defendants and DOES 1-20 breached the oral, written and implied-in-fact employment agreement by discharging Plaintiff without good cause, in violation of the law as alleged above, and despite her continued satisfactory performance.

66.    Plaintiff suffered damages legally caused by the breach of contract in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against all Defendants as follows:

a.    That Plaintiff recover judgment against Defendants in an amount to be determined at trial as general, special, actual, compensatory and/or nominal damages;

b.    That Plaintiff recover judgment against Defendants for punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants;

c.    That Plaintiff recover judgment against Defendants in an amount to be determined at trial for expenses of this litigation, including, but not limited to, reasonable attorneys' fees as provided by the FEHA and Labor Code;

d.    That Plaintiff recover prejudgment and post-judgment interest; and

e.    That Plaintiff have such other relief as this Court deems just and appropriate.

{00037481}

14

1    Dated: March 25, 2008                    THE DAVIS LAW FIRM

2

3                                             By:

4                                                 TIMOTHY C. DAVIS
                                                  DAMIEN P. LILLIS
                                                  ELISA R. ALDECOA
5                                                 Attorneys for Plaintiff Bonnie Schmidt

6         JURY TRIAL DEMAND

7         Plaintiff demands trial by jury.

8    Dated: March 25, 2008                    THE DAVIS LAW FIRM

9

10                                            By:

11                                                TIMOTHY C. DAVIS
                                                  DAMIEN P. LILLIS
                                                  ELISA R. ALDECOA
12                                                Attorneys for Plaintiff Bonnie Schmidt

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     {00017481}                              15
                                   FIRST AMENDED COMPLAINT

1

## PROOF OF SERVICE

2

The undersigned hereby declares:

3       I am over the age of 18 years and not a party to or interested in the within entitled cause. I am
4  an employee of The Davis Law Firm, APC and my business address is 625 Market Street, 12th Floor,
   San Francisco, CA 94105. On the date stated below, I served a true copy of:

5

## FIRST AMENDED COMPLAINT FOR DAMAGES

6    ☒   By mail, by placing said document(s) in an envelope addressed as shown below. I am readily
7        familiar with my firm's practice for collection and processing of correspondence for mailing
         with the United States Postal Service, to wit, that correspondence will be deposited with the
8        United States Postal Service this same day in the ordinary course of business. I sealed said
         envelope and placed it for collection and mailing on the date stated below to the addressee stated
9        below, following ordinary business practices.

10   ☐   By hand delivery, by placing said document(s) in an envelope addressed as shown below, and
         delivery them to the attorneys addressed on the envelopes at 400 County Center, Redwood City,
11       California.

12   ☐   By facsimile transmission to the individual and facsimile number set forth below. I caused the
13       document(s) to be transmitted by facsimile machine to the addresses listed below at the
         facsimile number listed below. I am readily familiar with my firm's practice for transmissions
14       by facsimile, to wit, transmissions are sent as soon as possible and are repeated, if necessary,
         until they are reported as complete and without error. In sending the above described document
15       by facsimile, I followed my firm's ordinary business practices.

16   ☐   By Overnight Delivery by placing said document(s) in a sealed Overnight Delivery envelope
17       addressed as shown below and causing such envelope delivered by commercial carrier service
         for overnight delivery to the addresses shown below.

18

19       Raymond L. Wheeler                          Attorneys for Defendants
         Theresa N. Burlison                         Telephone: (650) 813-5600
20       Morrison & Foerster LLP                     Facsimile: (650) 494-0792
         755 Page Mill Road
21       Palo Alto, CA 94304-1018

22

23       I declare under penalty of perjury, under the laws of the State of California that the foregoing is
24  true and correct, and that this declaration was executed at San Francisco, California on March 25, 2008.

25

26                                       Cortney A. Creamer

27

28

{00017481}                              16

EXHIBIT 5

1  RAYMOND L. WHEELER (BAR NO. 52886)
   Email:    RWheeler@mofo.com
2  TERESA N. BURLISON (BAR NO. 230854)
   Email:    TBurlison@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304-1018
   Telephone:  650.813.5600
5  Facsimile:  650.494.0792

6  LINDA E. SHOSTAK (BAR NO. 64599)
   Email:    LShostak@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California 94105-2482
   Telephone:  415.268.7000
9  Facsimile:  415.268.7522

10 Attorneys for Defendants
   SIEMENS MEDICAL SOLUTIONS USA, INC.,
11 SIEMENS CORPORATION, BJOERN FISCHER,
   and HOLGER LIEBEL
12

13             SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                      COUNTY OF SANTA CLARA

15

16 BONNIE J. SCHMIDT,                    Case No.   1-07-CV-091780

17             Plaintiff,
                                         UNLIMITED JURISDICTION
18      v.
                                         JOINT STIPULATION
19 SIEMENS MEDICAL SOLUTIONS USA, INC.,  REGARDING TRIAL SETTING
   a Delaware corporation; SIEMENS       CONFERENCE AND [PROPOSED]
20 CORPORATION, a New York corporation;  ORDER
   SIEMENS AG, a German public stock
21 corporation; BJOERN FISCHER, an individual;   Date Action Filed: August 9, 2007
   HOLGER LIEBEL, an individual; and     Trial Date:      None Set
22 DOES 1-20,

23             Defendants.

24

25

26

27

28
   pa-1254784

1        WHEREAS, a case management conference was held on February 21, 2008, during which the
2    Parties stipulated on the record to submit this matter to mediation.

3        WHEREAS, the Parties filed a Joint Stipulation Selecting Mediation and [Proposed] Order on
4    March 14, 2008, agreeing to mediate on August 8, 2008 with Mark S. Rudy of Rudy, Exelrod &
5    Zieff, LLP serving as mediator. As part of this Joint Stipulation, the Parties requested that the Court
6    not schedule a trial date until after this matter has been mediated.

7        WHEREAS, the Court set a Trial Setting Conference in this matter on August 19, 2008 in
8    Department 5 at 11:00 a.m.

9        WHEREAS, Plaintiff has learned that she no longer is available for mediation on August 8,
10   2008, and thus the Parties have re-scheduled their mediation with Mr. Rudy to September 3, 2008.

11       WHEREFORE, IT IS STIPULATED AND AGREED by the Parties, through their respective
12   counsel of record:

13       1.    The Parties agree to mediate this matter on September 3, 2008, before Mark S. Rudy.

14       2.    The Parties agree that a trial date should not be set prior to mediation. The Parties
15   therefore jointly request that the Trial Setting Conference currently scheduled for August 19, 2008 be
16   vacated, and that a new Trial Setting Conference be set after the September 3, 2008 mediation, and
17   consistent with the Court's calendar.

18
19       Dated: May 21, 2008        RAYMOND L. WHEELER
                                     TERESA N. BURLISON
20                                   MORRISON & FOERSTER LLP
21
22                           By:    Teresa N. Burlison
                                     Teresa N. Burlison
23
                             Attorneys for Defendants
24                           SIEMENS MEDICAL SOLUTIONS USA, INC.,
                             SIEMENS CORPORATION,
25                           BJOERN FISCHER, and HOLGER LIEBEL
26
27
28

pa-1254784

1

Dated: May $\underline{21}$, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TIMOTHY C. DAVIS
DAMIEN P. LILLIS
MARGUERITE E. MEADE
THE DAVIS LAW FIRM, PC

By: _____
Marguerite E. Meade

Attorneys for Plaintiff

BONNIE J. SCHMIDT

1              [PROPOSED] ORDER

2       PURSUANT TO STIPULATION OF THE PARTIES, IT IS HEREBY ORDERED as

3    follows:

4       The Parties shall mediate this matter no later than September 3, 2008. Further, the Trial

5    Setting Conference currently scheduled for August 19, 2008 is VACATED and a new Trial Setting

6    Conference is set for _Apt 9_, 2008, which is a date after the September 3 mediation has

7    commenced.

8

9

10                                          Mary Jo Levinger

                    JUN    2 2008
11                                          _____
                                            Judge of the Superior Court
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     pa-1254784

                                [PROPOSED] ORDER

1

## PROOF OF SERVICE

2    I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is
755 Page Mill Road, Palo Alto, California 94304-1018. I am not a party to the within cause, and I

3    am over the age of eighteen years.

4    I further declare that on the date hereof, I served a copy of:

5    **JOINT STIPULATION REGARDING TRIAL SETTING CONFERENCE AND
[PROPOSED] ORDER**

6

7    ☐    **BY FACSIMILE [Code Civ. Proc sec. 1013(e)]** by sending a true copy from
Morrison & Foerster LLP's facsimile transmission telephone number 650.494.0792 to

8    the fax number(s) set forth below, or as stated on the attached service list. The
transmission was reported as complete and without error. The transmission report

9    was properly issued by the transmitting facsimile machine.

10
I am readily familiar with Morrison & Foerster LLP's practice for sending facsimile

11    transmissions, and know that in the ordinary course of Morrison & Foerster LLP's
business practice the document(s) described above will be transmitted by facsimile

12    on the same date that it (they) is (are) placed at Morrison & Foerster LLP for
transmission.

13

14    ☒    **BY U.S. MAIL [Code Civ. Proc sec. 1013(a)]** by placing a true copy thereof
enclosed in a sealed envelope with postage thereon fully prepaid, addressed as

15    follows, for collection and mailing at Morrison & Foerster LLP, 755 Page Mill Road,
Palo Alto, California 94304-1018 in accordance with Morrison & Foerster LLP's

16    ordinary business practices.

17    I am readily familiar with Morrison & Foerster LLP's practice for collection and
processing of correspondence for mailing with the United States Postal Service, and

18    know that in the ordinary course of Morrison & Foerster LLP's business practice the
document(s) described above will be deposited with the United States Postal

19    Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP
20    with postage thereon fully prepaid for collection and mailing.

21    ☐    **BY OVERNIGHT DELIVERY [Code Civ. Proc sec. 1013(d)]** by placing a true
copy thereof enclosed in a sealed envelope with delivery fees provided for,

22    addressed as follows, for collection by UPS, at 755 Page Mill Road, Palo Alto,
California 94304-1018 in accordance with Morrison & Foerster LLP's ordinary

23    business practices.

24    I am readily familiar with Morrison & Foerster LLP's practice for collection and
25    processing of correspondence for overnight delivery and know that in the ordinary
course of Morrison & Foerster LLP's business practice the document(s) described

26    above will be deposited in a box or other facility regularly maintained by UPS or
delivered to an authorized courier or driver authorized by UPS to receive documents

27    on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

28

pa-1254784                                     1

1   ☐   **BY PERSONAL SERVICE [Code Civ. Proc sec. 1011]** by placing a true copy
2       thereof enclosed in a sealed envelope addressed as follows for collection and
        delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of
3       the document(s) listed above to the person(s) at the address(es) set forth below.

4       I am readily familiar with Morrison & Foerster LLP's practice for the collection and
        processing of documents for hand delivery and know that in the ordinary course of
5       Morrison & Foerster LLP's business practice the document(s) described above will be
        taken from Morrison & Foerster LLP's mailroom and hand delivered to the
6       document's addressee (or left with an employee or person in charge of the
        addressee's office) on the same date that it is placed at Morrison & Foerster LLP's
7       mailroom.

8   ☐   **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6]** by electronically
9       mailing a true and correct copy through Morrison & Foerster LLP's electronic mail
        system to the email address(s) set forth below, or as stated on the attached service
10      list per agreement in accordance with Code of Civil Procedure section 1010.6.

11

12      The Davis Law Firm, APC              _____ Fax
        Timothy C. Davis, Esq.               __X__ U.S. Mail
13      Marguerite E. Meade                  _____ Overnight
        625 Market Street, 12th Floor        _____ Personal
14      San Francisco, CA 94105
        Phone: (415) 278-1400                Attorneys for Plaintiff
15      Fax:   (415) 278-1401                Bonnie J. Schmidt

16      I declare under penalty of perjury under the laws of the State of California that the foregoing
17  is true and correct.

18      Executed at Palo Alto, California, this 21st day of May, 2008.

19
20
21          Kate Trevisan                        _Kate_
22             (typed)                              (signature)
23
24
25
26
27
28

EXHIBIT 6

Westlaw.

177 P.3d 232                                                                                                    Page 1
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

►Jones v. Lodge at Torrey Pines Partnership
Cal.,2008.

Supreme Court of California
Scott JONES, Plaintiff and Appellant,
v.
The LODGE AT TORREY PINES PARTNERSHIP
et al., Defendants and Respondents.
**No. S151022.**

March 3, 2008.
Rehearing Denied April 30, 2008.[FN*]

FN* Kennard, Werdegar, and Moreno, JJ.,
are of the opinion the petition should be
granted.

**Background:** Employee sued employer and
supervisor alleging that employer engaged in sexual
orientation discrimination under Fair Employment
and Housing Act (FEHA), and that both employer
and supervisor were liable for retaliation under
FEHA. After entering judgment on a verdict
awarding employee $1,395,000 against employer and
$155,000 against supervisor, the Superior Court, San
Diego County, No. GIC811515,Richard E.L. Strauss,
J., granted defendants' motions for judgment
notwithstanding the verdict (JNOV) and,
alternatively, a new trial. Employee appealed.
Defendants filed protective cross-appeal from
original judgment. The Court of Appeal reversed,
reinstated the original judgment, and affirmed. The
Supreme Court granted review, superseding the
opinion of the Court of Appeal.

**Holding:** The Supreme Court, Chin, J., held that
nonemployer individuals may not be held personally
liable under FEHA for their role in retaliation,
disapproving *Taylor v. City of Los Angeles Dept. of
Water & Power,* 144 Cal.App.4th 1216, 51
Cal.Rptr.3d 206, and *Walrath v. Sprinkel,* 99
Cal.App.4th 1237, 121 Cal.Rptr.2d 806.

Judgment of Court of Appeal reversed and remanded.

Opinion, 54 Cal.Rptr.3d 379, superseded.

Werdegar, J., filed dissenting opinion.

Moreno, J., filed dissenting opinion, in which
Kennard and Werdegar, JJ., joined.

West Headnotes

**[1] Civil Rights 78 ☞1113**

78 Civil Rights
  78H Employment Practices
    78k1108 Employers and Employees Affected
      78k1113 k. Individuals as "Employers".
Most Cited Cases

**Civil Rights 78 ☞1736**

78 Civil Rights
  78V State and Local Remedies
    78k1734 Persons Protected, Persons Liable,
and Parties
      78k1736 k. Employment Practices. Most
Cited Cases
The employer may be held liable for retaliation under
the Fair Employment and Housing Act (FEHA), but
nonemployer individuals may not be held personally
liable under FEHA for their role in that retaliation;
although FEHA prohibits retaliation by "any
employer, labor organization, employment agency, or
person," the rationale for not holding individuals
personally liable for discrimination claims under
FEHA applies equally to retaliation claims;
disapproving *Taylor v. City of Los Angeles Dept. of
Water & Power,* 144 Cal.App.4th 1216, 51
Cal.Rptr.3d 206, and *Walrath v. Sprinkel,* 99
Cal.App.4th 1237, 121 Cal.Rptr.2d 806.West's
Ann.Cal.Gov.Code § 12940(h).
See 8 Witkin, Summary of Cal. Law (10th ed. 2005)
Constitutional Law, § 940; Chin et al., Cal. Practice
Guide: Employment Litigation (The Rutter Group
2005) ¶¶ 7:180, 7:770 et seq. (CAEMPL, Ch. 7-A);
Cal. Jur. 3d, Labor, § 77; Cal. Civil Practice
(Thomson/West 2007) Employment Litigation, § 2:75.

**[2] Civil Rights 78 ☞1736**

78 Civil Rights
  78V State and Local Remedies

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                                                                    Page 2
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

78k1734 Persons Protected, Persons Liable, and Parties

78k1736 k. Employment Practices. Most Cited Cases
Although the employer may be liable for unlawful discrimination under Fair Employment and Housing Act (FEHA), individuals working for the employer, including supervisors, are not personally liable for FEHA for that discrimination. West's Ann.Cal.Gov.Code § 12940(a).

[3] Statutes 361 ☞184

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k180 Intention of Legislature
                361k184 k. Policy and Purpose of Act. Most Cited Cases

Statutes 361 ☞217.4

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k217.4 k. Legislative History in General. Most Cited Cases
If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.

[4] Statutes 361 ☞217.3

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k217.3 k. Legislative Hearings, Reports, Etc. Most Cited Cases
Although the Legislative Counsel's summaries are not binding, they are entitled to great weight.

[5] Statutes 361 ☞220

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction

                361k220 k. Legislative Construction. Most Cited Cases
The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law.

[6] Evidence 157 ☞33

157 Evidence
    157I Judicial Notice
        157k27 Laws of the State
            157k33 k. Legislative Proceedings and Journals. Most Cited Cases
In supervisor's appeal from judgment on jury verdict awarding employee $155,000 in compensatory damages in retaliation claim under Fair Employment and Housing Act (FEHA), Supreme Court would grant employee's request that it take judicial notice of five-page document entitled, "Proposed Changes to the Fair Employment and Housing Act for 1986," which was allegedly included in material found in legislative bill file, although it was undated and unsigned, did not state who authored it, and did not appear to be a committee report, but Supreme Court would ultimately find the document to be of little or no help in ascertaining legislative intent behind language of FEHA prohibiting retaliation. West's Ann.Cal.Evid.Code § 452(c); West's Ann.Cal.Gov.Code § 12940(h).

***625 Toothacre & Toothacre, Scott H. Toothacre and Rod M. Toothacre, San Diego, for Plaintiff and Appellant.

Law Offices of Jeffrey K. Winikow and Jeffrey K. Winikow, Los Angeles, for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Barry R. Levy, Encino, Nina E. Scholtz; Wilson Petty Kosmo & Turner, Regina A. Petty, Michael S. Kalt, Jessica A. Chasin, San Diego; and Robert H. Gleason, for Defendants and Respondents.

Law Offices of Steven Drapkin and Steven Drapkin, Los Angeles, for Employers Group, California Employment Law Council and California Chamber of Commerce as Amici Curiae on behalf of Defendants and Respondents.

Liebert Cassidy Whitmore, Melanie M. Poturica and David A. Urban, Los Angeles, for League of California Cities as Amicus Curiae on behalf of Defendants and Respondents.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232,                                                                                                    Page 3
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

CHIN, J.

*1160**234 In _Reno v. Baird_ (1998) 18 Cal.4th 640,
76 Cal.Rptr.2d 499, 957 P.2d 1333(_Reno_ ), we held
that, although an employer may be held liable for
discrimination under the California Fair Employment
and Housing Act (FEHA) ( Gov.Code. § 12900 et
seq.),[FN1] nonemployer individuals are not personally
liable for that discrimination. In this case, we must
decide whether the FEHA makes individuals
personally liable for _retaliation_. We conclude that the
same rule applies to actions for retaliation that
applies to actions for discrimination: The employer,
but not nonemployer individuals, may be held liable.

> FN1. All further statutory references are to
> the Government Code unless otherwise
> indicated.   Unlabeled   references   to
> subdivisions are to subdivisions of section
> 12940.

## I. PROCEDURAL HISTORY

Plaintiff Scott Jones sued his employer, The Lodge at
Torrey Pines Partnership (The Lodge), and his
supervisor at work, Jean Weiss, as well as others no
longer involved in this litigation, for various causes
of action, including sexual orientation harassment in
violation of section 12940, subdivision (j)(1), sexual
orientation discrimination in violation of subdivision
(a), *1161 and retaliation in violation of subdivision
(h). The trial court granted summary ***626
adjudication in defendants' favor regarding some of
the causes of action, including the harassment cause
of action. It found that plaintiff had failed to present
admissible evidence of harassment by Weiss that was
severe and pervasive enough to alter the conditions of
his employment and create an abusive working
environment.

Ultimately, two causes of action went to a jury trial:
the claim for sexual orientation discrimination
against The Lodge only, and the claim for retaliation
against both The Lodge and Weiss. The jury returned
a verdict for plaintiff on both causes of action. It
awarded compensatory damages of $1,395,000
against The Lodge and $155,000 against Weiss, but
found Weiss did not act with malice or oppression.

The trial court originally entered judgment on the
verdict, but later it granted both defendants' motions
for judgment notwithstanding the verdict and,

alternatively, for a new trial. Among other things, it
concluded that plaintiff had presented insufficient
evidence that he had suffered an adverse employment
action as to both causes of action. Concerning
defendant Weiss, it also ruled that an individual
cannot be liable for retaliation. It entered judgment in
favor of both defendants.

Plaintiff appealed, and defendants cross-appealed.
The Court of Appeal reversed the order granting the
motions for judgment notwithstanding the verdict and
for a new trial, and reinstated the original judgment
on the verdict. Among other things, the court
concluded there was sufficient evidence that plaintiff
had suffered an adverse employment action. It also
found that an individual can be held liable for
retaliation under the FEHA.

We granted defendants' petition for review limited to
the question whether an individual may be held
personally liable for retaliation under the FEHA.

## II. DISCUSSION

Section 12940, part of the FEHA, begins, "It shall be
an unlawful employment practice, unless based upon
a bona fide occupational qualification, or, except
where based upon applicable security regulations
established by the United States or the State of
California: ..." Several subdivisions follow, defining
various unlawful employment practices. One
unlawful employment practice is for an employer to
engage in specified kinds of discrimination. (Subd.
(a).) Another, the one involved in this case, is "[f]or
any employer, labor organization, employment
agency, or person to discharge, expel, or otherwise
discriminate against any person because the person
has opposed any practices forbidden under this part
or because the *1162 person has filed a complaint,
testified, or assisted in any proceeding under this
part." (Subd. (h).) This form of unlawful employment
practice is often called simply "retaliation." (See,
e.g., _Yanowitz v. L'Oreal USA, Inc._ (2005) 36 Cal.4th
1028, 32 Cal.Rptr.3d 436, 116 P.3d 1123(_Yanowitz_
).) Another unlawful employment**235 practice is
harassment. (Subd. (j).)[FN2]

> FN2.  The  Assembly  passed  two  bills
> amending section 12940 effective January 1,
> 2001.  (Assem. Bill No. 1856 (1999-2000
> Reg. Sess.) and Assem. Bill No. 2222

42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

(1999-2000 Reg. Sess.).) By its own terms, Assembly Bill No. 2222 incorporated the changes imposed by Assembly Bill No. 1856. Among other changes, this legislation added new subdivisions (e) and (f) to section 12940 and redesignated former subdivisions (c) through (k) as subdivisions (g) through (m), respectively. (Stats.2000, ch. 1049, §§ 7.5, 11.) Accordingly, current subdivision (h) was formerly subdivision (f), and current subdivision (j) was formerly subdivision (h).

\*\*\*627[1][2] Plaintiff has sued his supervisor at work, as well as the employer itself, for retaliation. We must decide whether individuals may be held personally liable for retaliation. In *Reno, supra,* 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333, we held that, although the employer may be liable for unlawful discrimination, individuals working for the employer, including supervisors, are not personally liable for that discrimination. The question here is whether language differences between subdivisions (a) (concerning discrimination) and (h) (concerning retaliation) require a different rule as to retaliation. Subdivision (a) makes it an unlawful employment practice for "an employer" to discriminate. Subdivision (h) makes it an unlawful employment practice for "any employer, labor organization, employment agency, or person" to retaliate.

Plaintiff argues that section 12940's plain language-specifically, the use of the word "person" in subdivision (h) to describe who may not retaliate-compels the conclusion that all persons who engage in prohibited retaliation are personally liable, not just the employer. Accordingly, plaintiff argues, we must follow that plain meaning without engaging in other kinds of statutory interpretation. (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737, 21 Cal.Rptr.3d 676, 101 P.3d 563.) The courts that have considered the same argument, including the Court of Appeal in this case, have so held. [*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1236-1237, 51 Cal.Rptr.3d 206;*Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237, 1240-1242, 121 Cal.Rptr.2d 806; see also *Winarto v. Toshiba America Electronics Components* (9th Cir.2001) 274 F.3d 1276, 1287-1288, and cases cited.) We disagree.

[3] The statutory language is not plain. Subdivision

(j), the subdivision prohibiting harassment, provides, "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee...." (Subd. (j)(3).) This is clear language imposing personal liability on all employees for their own harassing actions. Subdivision (h) is far less clear. Its language does lend itself to \*1163 plaintiff's interpretation, but, as we explain, that is not the only reasonable interpretation of the statutory language. "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." *(Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra,* 34 Cal.4th at p. 737, 21 Cal.Rptr.3d 676, 101 P.3d 563.)

The language difference between subdivisions (a) and (h) of section 12940 is not as great as initially appears. Although subdivision (a) does not itself use the word "person" to describe who engages in the prohibited discrimination, in two respects that subdivision arguably does govern discrimination by a "person." First, section 12926, subdivision (d), defines "[e]mployer" (the word used in § 12940, subd. (a)) as including "any *person* acting as an agent of an employer, directly or indirectly...." (Italics added.) Second, subdivision (i) of section 12940 makes it an unlawful employment practice "[f]or any *person* to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or attempt to do so." (Italics added.) The plaintiff in *Reno* argued that the use of the word "person" in these provisions meant that persons, as well as the employer itself, could be liable for discrimination. We rejected the argument. We said the person-as-agent language of section 12926, subdivision (d), *could* mean, as the plaintiff urged, that such persons can be held personally\*\*\*628 liable, but it could also have been " 'intended only to ensure that *employers* will be held liable if \*\*236 their supervisory employees take actions later found discriminatory, and that *employers* cannot avoid liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.' " *(Reno, supra,* 18 Cal.4th at p. 647, 76 Cal.Rptr.2d 499, 957 P.2d 1333, quoting *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 66, 53 Cal.Rptr.2d 741*(Janken ).)* For several reasons, we agreed with the *Janken* court that the latter construction was the correct one. *(Reno, supra,* at pp. 647-655, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) We also concluded

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

that the aiding and abetting language of former
subdivision (g) (now subd. (i)) of section 12940 did
not impose personal liability on nonemployers.
(*Reno, supra*, at pp. 655-656, 76 Cal.Rptr.2d 499,
957 P.2d 1333.)

The question whether personal liability exists where
the statutes prohibit discrimination by "any person
acting as an agent of an employer" (§ 12926, subd.
(d)) and by "any person" who aids and abets an
unlawful employment practice (§ 12940, subd. (i))-
which we resolved in *Reno, supra*, 18 Cal.4th 640, 76
Cal.Rptr.2d 499, 957 P.2d 1333-is similar to the
question presented here-whether personal liability
exists where the statute prohibits retaliation by "any
employer, labor organization, employment agency, or
person...."(*Id.*, subd. (h).) We can and must analyze it
similarly. In context, the Legislature may have used
the word "person" in subdivision (h) for reasons
unrelated to a desire to make individuals personally
liable for retaliation. Subdivision (h) is a catchall
provision aimed at prohibiting retaliation against
"any person because the person has opposed any
practices forbidden *under this part* or because the
*1164 person has filed a complaint, testified, or
assisted in any proceeding *under this part.*" (Italics
added.) The subdivision thus incorporates other
unlawful employment practices defined in other parts
of section 12940, and forbids retaliation against
anyone opposing any such unlawful employment
practice. Each of the entities to which subdivision (h)
applies-employer, labor organization, employment
agency, or person-is the subject of one or more other
subdivisions of section 12940 defining specific
unlawful employment practices. It is possible the
Legislature merely wanted to use each of these terms
in subdivision (h) to conform to the fact that other
provisions use those terms, rather than to impose
personal liability on individuals in addition to the
employer itself. Accordingly, we must engage in
statutory interpretation to resolve this ambiguity, as
we did in *Reno* itself.

*Reno's* rationale for not holding individuals
personally liable for discrimination applies equally to
retaliation. In *Reno*, we noted that the FEHA
prohibits harassment as well as discrimination but
that it treated them differently. (*Reno, supra*, 18
Cal.4th at p. 644, 76 Cal.Rptr.2d 499, 957 P.2d
1333.) We recognized that at least some individuals
may be liable for harassment.[FN3] But we concluded

that the FEHA ***629 does not make individuals
personally liable for discrimination. We found
persuasive *Janken, supra*, 46 Cal.App.4th 55, 53
Cal.Rptr.2d 741, which had " 'conclude[d] that the
Legislature's differential treatment of harassment and
discrimination is based on the fundamental
distinction between harassment as a type of conduct
not necessary to a supervisor's job performance, and
business or personnel management decisions-which
might later be considered discriminatory-as
inherently necessary to performance of a supervisor's
job.' " (*Reno, supra*, at p. 645, 76 Cal.Rptr.2d 499,
957 P.2d 1333, quoting *Janken, supra*, at pp. 62-63,
53 Cal.Rptr.2d 741.)

> FN3. Later, in *Carrisales v. Department of
> Corrections*, (1999) 21 Cal.4th 1132, 90
> Cal.Rptr.2d 804, 988 P.2d 1083, we held
> that nonsupervising coworkers are not
> personally liable for harassment under the
> FEHA. After we decided *Carrisales*, the
> Legislature abrogated its holding in
> legislation which became effective January
> 1, 2001. (See *McClung v. Employment
> Development Dept.* (2004) 34 Cal.4th 467,
> 471, 20 Cal.Rptr.3d 428, 99 P.3d
> 1015.)Section 12940, subdivision (j)(3),
> now provides: "An employee of an entity
> subject to this subdivision is personally
> liable for any harassment prohibited by this
> section that is perpetrated by the employee,
> regardless of whether the employer or
> covered entity knows or should have known
> of the conduct and fails to take immediate
> and appropriate corrective action."

"The [*Janken*] court noted that 'harassment consists
of a type of conduct not necessary for performance of
a supervisory job. **237 Instead, harassment consists
of conduct outside the scope of necessary job
performance, conduct presumably engaged in for
personal gratification, because of meanness or
bigotry, or for other personal motives. Harassment is
not conduct of a type necessary for management of
the employer's business or performance of the
supervisory employee's job. [Citations.] [¶]
Discrimination claims, by contrast, arise out of the
performance of necessary personnel management
duties. *1165 While harassment is not a type of
conduct necessary to personnel management, making
decisions is a type of conduct essential to personnel

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:08-cv-02950-JF    Document 5-2    Filed 07/11/2008    Page 52 of 65

177 P.3d 232                                                                                                    Page 6
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

management. While it is possible to avoid making
personnel decisions on a prohibited discriminatory
basis, it is not possible either to avoid making
personnel decisions or to prevent the claim that those
decisions were discriminatory. [¶] ... An individual
supervisory employee cannot ... refrain from
engaging in the type of conduct which could later
give rise to a discrimination claim. Making personnel
decisions is an inherent and unavoidable part of the
supervisory function. Without making personnel
decisions, a supervisory employee simply cannot
perform his or her job duties.' " *(Reno, supra,* 18
Cal.4th at pp. 645-646, 76 Cal.Rptr.2d 499, 957 P.2d
1333, quoting *Janken, supra,* 46 Cal.App.4th at pp.
63-64, 53 Cal.Rptr.2d 741.)

"The *Janken* court also noted that the FEHA exempts
small employers from liability for discrimination.
'Section 12926, subdivision (d) defines "employer"
as including "any person regularly employing five or
more persons." A person who regularly employs less
than five other persons is not an "employer" for
purposes of FEHA prohibitions on discrimination,
and hence cannot be sued for discrimination.
*(Jennings v. Marralle* (1994) 8 Cal.4th 121[, 32
Cal.Rptr.2d 275, 876 P.2d 1074].) For purposes of
harassment, however, "employer" is specially defined
in section 12940, [former] subdivision (h)(3)(A) to
include any person regularly employing *one* or more
persons. Section 12940, [former] subdivision (h)(4)
and (5) make clear that this special definition of
"employer" as someone employing only *one* other
person applies only to harassment claims, and that
discrimination claims continue to be covered by the
"five or more" definition in section 12926,
subdivision (d). The Legislature thus made a clear
distinction in California in the treatment of
harassment claims versus the treatment of
discrimination claims: small employers can be sued
for harassment, but they cannot be sued for
discrimination. [¶] ... [¶] ... The Legislature clearly
intended to protect employers of less than five from
the burdens of litigating discrimination claims.
[Citation.] ... [I]t is "inconceivable" that the
Legislature simultaneously intended to subject
individual nonemployers to the burdens of litigating
such claims. To so ***630 construe the statute would
be "incongruous" and would "upset the balance"
struck by the Legislature.' *(Janken, supra,* 46
Cal.App.4th at pp. 71-72[, 53 Cal.Rptr.2d 741],
original italics, fns. omitted.)" *(Reno, supra,* 18
Cal.4th at pp. 650-651, 76 Cal.Rptr.2d 499, 957 P.2d

1333.)

"The *Janken* court stated that 'imposing liability on
individual supervisory employees would do little to
enhance the ability of victims of discrimination to
recover monetary damages, while it can reasonably
be expected to severely impair the exercise of
supervisory judgment. The minimal potential for
benefit to an alleged victim juxtaposed with the
potentially severe adverse effects of imposing
personal liability on individual supervisory
employees is an additional reason for our conclusion
that this is not the result intended by the Legislature.

*1166 " 'Many courts have noted the importance of
maintaining the conditions in which impartial
judgment can be exercised by officials performing
duties in the public sector. [Citations.] ... [¶] No one
could reasonably doubt that effective and efficient
management of industrial enterprises and other
economic organizations is also important to the
public welfare. The societal interest in effective
private sector personnel management may be less
direct, but only marginally (if at all) less
compelling.... Yet it is manifest that if every
personnel manager risked losing his or her home,
retirement savings, hope of children's college
education, etc., whenever he or she made a personnel
management decision, management of industrial
enterprises**238 and other economic organizations
would be seriously affected. [Citation.] [¶] ... [¶]

" 'Plaintiffs' theory would place a supervisory
employee in a direct conflict of interest with his or
her employer every time that supervisory employee
was faced with a personnel decision.... [It] would
coerce the supervisory employee not to make the
optimum lawful decision for the employer. Instead,
the supervisory employee would be pressed to make
whatever decision was least likely to lead to a claim
of discrimination against the supervisory employee
personally, or likely to lead only to that
discrimination claim which could most easily be
defended. The employee would thus be placed in the
position of choosing between loyalty to the
employer's lawful interests at severe risk to his or her
own interests and family, versus abandoning the
employer's lawful interests and protecting his or her
own personal interests. The insidious pressures of
such a conflict present sobering implications for the
effective management of our industrial enterprises

Case 5:08-cv-02950-JF    Document 5-2    Filed 07/11/2008    Page 53 of 65

177 P.3d 232                                                                                   Page 7
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

and other organizations of public concern. We believe that if the Legislature intended to place all supervisory employees in California in such a conflict of interest, the Legislature would have done so by language much clearer than that used here.

" 'Moreover, imposing personal liability against individual supervisory employees adds little to an alleged victim's legitimate prospects for monetary recovery. The plaintiff-employee's primary target remains the employer. Adding individual supervisors personally as defendants adds mostly an in terrorem quality to the litigation, threatening individual supervisory employees with the spectre of financial ruin for themselves and their families and correspondingly enhancing a plaintiff's possibility of extracting a settlement on a basis other than the merits. Enhancing the prospects for obtaining a settlement on a basis other than the merits is hardly a worthy legislative objective....' "(Reno, supra, 18 Cal.4th at pp. 651-653, 76 Cal.Rptr.2d 499, 957 P.2d 1333, quoting Janken, supra, 46 Cal.App.4th at pp. 72-75, 53 Cal.Rptr.2d 741.)

***631 In Reno, we also explained that "[c]orporate decisions are often made collectively by a number of persons. Different individuals might have differing levels of awareness and participation in the decisions. When a collective *1167 decision is discriminatory, some participants might have acted innocently, others less so. Assessing individual blame might be difficult, in contrast to simply placing blame on the corporation, on whose behalf the individuals acted. Moreover, to make collective decisions possible, individuals often must rely on information or evaluations that others supply. Imposing individual liability for collective decisions might place the individuals in an adversarial position to each other (as well as to the corporation). Individuals might fear to act in reliance on input from others. Some might fear that a potentially controversial but, so far as they can know, correct and necessary collective decision might be misconstrued and give rise to a discrimination action. Out of caution, they might feel compelled to dissent from that decision, or attempt to disassociate themselves from it, merely to protect their pocketbooks. For these reasons, imposing liability on the corporate whole rather than each individual who participated in the corporate decision is sensible." (Reno, supra, 18 Cal.4th at p. 662, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)

We also explained that "[w]e do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive, for the innocent as well as the wrongdoer. By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (Reno, supra, 18 Cal.4th at p. 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) "For these reasons, we conclude[d] that individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." (Ibid.)

All of these reasons for not imposing individual liability for discrimination-supervisors**239 can avoid harassment but cannot avoid personnel decisions, it is incongruous to exempt small employers but to hold individual nonemployers liable, sound policy favors avoiding conflicts of interest and the chilling of effective management, corporate employment decisions are often collective, and it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision-apply equally to retaliation. Indeed, some may apply even more forcefully to retaliation claims. If an employee gains a reputation as a complainer, supervisors might be particularly afraid to impose discipline on that employee or make other lawful personnel decisions out of fear the employee might claim the action was retaliation for the complaining. The Legislature has given the same exemption to small employers against claims of retaliation that it gave small employers against claims of discrimination. (See § 12940, subd. (j) (4)(A) ["The definition of 'employer' in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision."].) No reason *1168 appears why it would want to make nonemployer individuals personally liable for retaliation but not for discrimination.[FN4]

> FN4. Justice Moreno's dissent argues, in part, that a supervisor who is liable for harassment should also be liable for retaliating against someone who opposes or

177 P.3d 232                                                                                                                    Page 8
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

reports that harassment. This case does not present that situation. Although plaintiff included a cause of action for harassment in his complaint, the trial court ruled, in a ruling long-since final and binding in this case, that there was no actionable harassment. Therefore, Weiss is *not* liable for harassment. Because the issue is not presented, we express no opinion on whether an individual who is personally liable for harassment might also be personally liable for retaliating against someone who opposes or reports that same harassment.

> Justice Werdegar's dissent asserts that our conclusion "undermines the entire purpose of the FEHA."(Dis. opn. of Werdegar, J., *post*, 72 Cal.Rptr.3d at p. 637, 177 P.3d at p. 244.) Here, the jury awarded plaintiff a judgment of $1,395,000 against his employer, an award no longer at issue in this case. Because the FEHA targets unlawful *employment* practices (§ 12940), we suggest that imposing a substantial judgment against the employer rather than a nonemployer does not entirely undermine its purpose.

***632 In *Yanowitz, supra*, 36 Cal.4th 1028, 32 Cal.Rptr.3d 436, 116 P.3d 1123, we considered what type of employment actions are sufficiently adverse to the employee to support a cause of action for retaliation. The relevant statutory language regarding discrimination is somewhat different than the language regarding retaliation. (Compare subd. (a) ["to discriminate against the person in compensation or in terms, conditions, or privileges of employment"] with subd. (h) ["to discharge, expel, or otherwise discriminate"].) Because of this language difference, the plaintiff argued that the test of what is an adverse employment action should be broader for retaliation claims than for discrimination claims. We disagreed: "When the provisions of section 12940 are viewed as a whole, ... we believe it is more reasonable to conclude that the Legislature intended to extend a comparable degree of protection both to employees who are subject to the types of basic forms of discrimination at which the FEHA is directed-that is, for example, discrimination on the

basis of race or sex-and to employees who are discriminated against in retaliation for opposing such discrimination, rather than to interpret the statutory scheme as affording a greater degree of protection against improper retaliation than is afforded against direct discrimination. [Citations.] Accordingly, we conclude that the term 'otherwise discriminate' in section 12940(h) should be interpreted to refer to and encompass the *same forms* of adverse employment activity that are actionable under section 12940(a)." *(Yanowitz, supra,* at pp. 1050-1051, 32 Cal.Rptr.3d 436, 116 P.3d 1123, italics added.) Thus, in order to establish either a discrimination or a retaliation claim, "an employee must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment...."*(Id.* at p. 1051, 32 Cal.Rptr.3d 436, 116 P.3d 1123; see also *id.* at p. 1052, 32 Cal.Rptr.3d 436, 116 P.3d 1123.)

If, as we held in *Yanowitz*, the employment actions that can give rise to a claim for retaliation are *identical* to the actions that can give rise to a claim for discrimination, it is hard to conceive why the Legislature would impose *1169 individual liability for actions that are claimed to be retaliatory but not for **240 the *same* actions that are claimed to be discriminatory.

The legislative history or, more precisely, the *absence* of legislative history, behind the inclusion of the word "person" in subdivision (h) of section 12940 also supports our conclusion that the subdivision does not impose personal liability on nonemployer individuals. The word "person" was added to former subdivision (f) (now subd. (h)), in 1987, effective January 1, 1988. (Stats.1987, ch. 605, § 1, p.1942.) If plaintiff is correct that the word "person" in subdivision (h) makes individuals liable for retaliation, then the legislation that ***633 added that word created individual liability where none had existed previously. The legislative history behind Assembly Bill No. 1167 (1987-1988 Reg. Sess.) (Assembly Bill No. 1167), the bill that added "person" to former subdivision (f) (now subd. (h)), does not support this conclusion.

Assembly Bill No. 1167 made several changes to various parts of the FEHA. As originally introduced, it added the word "person" to section 12940, former subdivision (e) (now subd. (g)). On April 28, 1987,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                                                         Page 9
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

the bill was amended to no longer add "person" to
former subdivision (e), but instead to add that word
to former subdivision (f) (now subd. (h), the
provision at issue here). Thus, if plaintiff is correct,
the April 28, 1987, amendment substantially changed
the law. If so, this change left no trace in the
legislative history. The Legislative Counsel's Digest
summarized several of the changes the bill made as
originally introduced, but it said nothing about any
change to section 12940. Instead, it said only, "The
bill would, in addition, make various conforming
changes to the act." (Legis. Counsel's Dig., Assem.
Bill No. 1167, as introduced Mar. 3, 1987, p. 1.)
Later, after the April 28, 1987, amendment, which
made several changes in addition to adding the word
"person" to former subdivision (f), the Legislative
Counsel's Digest described several of the
amendments, but again made no mention whatever of
section 12940. Instead, it said only, "The bill would,
in addition, make various *technical and conforming*
changes to the act." (Legis. Counsel's Dig., Assem.
Bill No. 1167, 4 Stats.1987, Summary Dig., p. 179,
italics added.) Thus, the Legislative Counsel *never*
specifically mentioned the proposed change to
section 12940, but merely lumped it into the catchall
term, "technical and conforming changes."

[4] "The Legislative Counsel's Digest is printed as a
preface to every bill considered by the Legislature."
(*Southland Mechanical Constructors Corp. v. Nixon*
(1981) 119 Cal.App.3d 417, 428, fn. 5, 173 Cal.Rptr.
917.)The Legislative Counsel's summaries "are
prepared to assist the Legislature in its consideration
of pending legislation." (*California Assn. of
Psychology Providers v. Rank* (1990) 51 Cal.3d 1,
17, 270 Cal.Rptr. 796, 793 P.2d 2.)**1170** Although
the Legislative Counsel's summaries are not binding
(*State ex rel. Harris v. PricewaterhouseCoopers, LLP*
(2006) 39 Cal.4th 1220, 1233, fn. 9, 48 Cal.Rptr.3d
144, 141 P.3d 256), they are entitled to great weight.
(*California Assn. of Psychology Providers v. Rank,
supra,* at p. 17, 270 Cal.Rptr. 796, 793 P.2d 2.) "It is
reasonable to presume that the Legislature amended
those sections with the intent and meaning expressed
in the Legislative Counsel's digest." (*People v.
Superior Court (Douglass)* (1979) 24 Cal.3d 428,
434, 155 Cal.Rptr. 704, 595 P.2d 139.) Thus, it is
reasonable to presume that, when the Legislature
added the word "person" to the retaliation
subdivision it intended to make only a technical and
conforming change. If adding the word "person"
merely conformed to the use of the word in

describing some of the unlawful employment
practices the retaliation provision references, the
change could legitimately be described as technical
and conforming. A change that created individual
liability for retaliation where none had existed
previously would be quite substantive, not technical.

Other legislative history bolsters the conclusion that
Assembly Bill No. 1167 only made a technical
change in the law. For example, the Assembly third
reading analysis of Assembly Bill No. 1167, as
amended on April 28, 1987, described some of the
bill's provisions but did not mention the change to
section 12940. Instead, it said only that the bill
"[m]akes other technical***634 and conforming
changes." (Assem., 3d reading analysis of Assem.
Bill No. 1167, as amended Apr. 28, **241 1987, p.
1.) Other committee reports say essentially the same
thing. (E.g., Assem. Com. on Housing and
Community Development, Rep. on Assem. Bill No.
1167 as amended Apr. 28, 1987 [the bill "[m]akes
other technical and conforming changes to the
[FEHA]"]; Sen. Housing and Urban Affairs Com.,
Rep. on Assem. Bill No. 1167, as amended Apr. 28,
1987 [same].)

All indications are that Assembly Bill No. 1167 had
no significant opposition. A bill analysis by the
Department of Fair Employment and Housing
(DFEH), signed by the "Department Director,"
described the bill, as amended on April 28, 1987, as
"a technical clean-up bill to clarify various sections
of the [FEHA] and make standards within the
[FEHA] more consistent between subsections."
(DFEH, Analysis of Assem. Bill No. 1167, as
amended Apr. 28, 1987, p. 1.) It described several of
the changes the bill would make, but again it does not
mention at all the amendment to section 12940. It
recommended supporting the bill, noting that the
DFEH and the Fair Employment and Housing
Commission (FEHC) "worked together to develop
this technical clean-up legislation with the effort to
make it noncontroversial." (*Id.,* p. 2.) Similarly, an
enrolled bill report that the DFEH prepared, signed
by the same Department Director who signed the
DFEH's bill analysis, described Assembly Bill No.
1167 as technical cleanup legislation that was
designed to be noncontroversial. It recommended the
Governor sign the bill and noted *1171 that it had no
opposition. (DFEH, Enrolled Bill Rep. on Assem.
Bill No. 1167, Sept. 3, 1987.) The legislation passed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:08-cv-02950-JF   Document 5-2   Filed 07/11/2008   Page 56 of 65

177 P.3d 232                                                                                          Page 10
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

by a vote of 32 to 0 in the Senate and 64 to 9 in the Assembly. (*Ibid.*) It is hard to imagine that a bill that created individual liability for retaliation where none had existed could be considered so noncontroversial.

The recent decision of *Jikanu Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 48 Cal.Rptr.3d 340 considered an argument that certain legislation significantly changed the law even though, as here, the supposed change left no trace in the legislative history. The Court of Appeal's summary, adapted to reflect the precise legal issue of this case, is apt. "It is difficult to imagine that legislation that would have [created individual liability for retaliation where none had existed] could properly be characterized as 'noncontroversial [or technical].' And we think it highly unlikely that the Legislature would make such a significant change in the [potential liability of individuals] without so much as a passing reference to what it was doing. The Legislature 'does not, one might say, hide elephants in mouseholes.' (*Whitman v. American Trucking Assns., Inc.* (2001) 531 U.S. 457, 468f, 121 S.Ct. 903, 149 L.Ed.2d 1].)" (*Id.* at p. 589, 48 Cal.Rptr.3d 340; see also *In re Christian S.* (1994) 7 Cal.4th 768, 782, 30 Cal.Rptr.2d 33, 872 P.2d 574 ["We are not persuaded the Legislature would have silently, or at best obscurely, decided so important and controversial a public policy matter and created a significant departure from the existing law."].)

[5] Plaintiff relies on some different legislative history to support his position. He cites an enrolled bill report that the DFEH prepared for the bill that made coworkers liable for harassment. That report said that "[e]xisting law provides that when a person retaliates against another person for opposing practices forbidden by the FEHA ... a complaint may be filed against any employer, labor organization, employment agency, or person." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 ***635 (1999-2000 Reg. Sess.), Sept. 11, 2000, p. 3, citing former subd. (f) (now subd. (h)).) Assuming the statement that a complaint may be filed against a person was intended to mean that a nonemployer individual could be held personally liable for retaliation, the statement, in a report prepared *after* the 2000 Legislature had passed legislation imposing liability on individuals for *harassment,* does not support the conclusion that the 1987 Legislature intended to impose individual liability for *retaliation*-especially

given the DFEH's own contemporaneous assessment of Assembly Bill No. 1167 (the bill that supposedly created individual liability for retaliation) as merely making noncontroversial technical changes to the FEHA. " 'The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law....' "**242(*Lolley v. Campbell* (2002) 28 Cal.4th 367, 379, 121 Cal.Rptr.2d 571, 48 P.3d 1128.) Moreover, that same report also said that "existing law provides that a complaint may be file[d] against a person who aids, abets, incites, compels, *1172 or coerces acts forbidden by the FEHA, or attempts to do so." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 (1999-2000 Reg. Sess.) Sept. 11, 2000, p. 3, citing former subd. (g) (now subd. (i)).) At the time the report was written, this court had already rejected the argument that former subdivision (g) imposed personal liability on individuals. (*Reno, supra,* 18 Cal.4th at pp. 655-656, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) Accordingly, this bit of legislative history is not persuasive.

Plaintiff also relies on a five-page document that, according to his judicial notice request, was included in material found in "the legislative bill file of the Assembly Committee on Housing and Community Development on Assembly Bill 1167." It is entitled, "Proposed Changes to the Fair Employment and Housing Act for 1986." It is undated and unsigned, and does not state who authored it. It does not appear to be a committee report. Under the title is stated, "The following is a summary of proposed changes.to the Fair Employment and Housing Act, which both the Department of Fair Employment and Housing and the Fair Employment and Housing Commission staff have developed." Plaintiff assumes this statement means that staff of the DFEH or the FEHC, or both, prepared the summary, but it could just as well mean only that the staff developed the proposed changes. Accordingly, it is not clear who wrote the document and for what purpose.

[6] "[W]ithout knowing who prepared the documents and for what purpose"(*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 10, fn. 3, 219 Cal.Rptr. 13, 706 P.2d 1146), we doubt very much the document helps ascertain legislative intent.[FN5] It is not clear which legislators, if any, read it. Plaintiff argues that there is "no evidence that [the document] was *not* considered by the Legislature...."

Case 5:08-cv-02950-JF    Document 5-2    Filed 07/11/2008    Page 57 of 65

177 P.3d 232                                                                                    Page 11
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

But, even if authored by administrative staff, we have no basis on which to conclude the document reflects \*\*\*636 the intent of the legislators who enacted the legislation.

> FN5. The court in *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at page 10, footnote 3, 219 Cal.Rptr. 13, 706 P.2d 1146, denied judicial notice of the document in question. In this case, before oral argument, we granted both parties' requests to notice legislative history materials, including, over defendants' objection, plaintiff's request to notice the five-page document discussed in the text. We will generally grant requests to notice legislative history documents, meaning we will at least *consider* them, even if, as here, we ultimately find some to be of little or no help in ascertaining legislative intent. (Evid.Code, § 452, subd. (c); see *In re S.B.* (2004) 32 Cal.4th 1287, 1296, fn. 3, 13 Cal.Rptr.3d 786, 90 P.3d 746.)

Moreover, even if we consider the document for whatever value it may have, it does not help plaintiff's position. As relevant, it states that the rationale for adding the word "person" to former subdivision (f) (now subd. (h)), "is to *conform with other sections of the Act which refer to unlawful conduct by a 'person.'* More importantly, the change will extend coverage to anyone who retaliates against an individual because that person filed a charge with DFEH. This will provide more protection to people exercising their lawful right to \*1173 file with DFEH."(Italics added.) The italicized language supports the view that the Legislature added the word "person" merely to conform to the fact that some other parts of the statute also use the word "person."

The rest of the quoted language, saying that the change will "extend coverage" and "provide more protection," is itself ambiguous. It does not say *how* the bill would extend coverage and provide more protection. If it said it would do so by making nonemployer individuals personally liable for retaliation, it would be clear; but it does not say that. Even if we assume that some legislators read this summary, it provides no basis to assume that the Legislature intended to create individual liability for retaliation that had not previously existed. In short,

an anonymous document that may or may not have been read by many legislators, that may or may not have reflected any legislator's intent, and that is ambiguous as relevant, \*\*243 does not aid us in ascertaining legislative intent.[FN6]

> FN6. Plaintiff also cites two committee reports regarding this same bill, which stated that some legal sources had believed individual liability for harassment had existed before our decision in *Carrisales v. Department of Corrections, supra,* 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083. These statements hardly support the conclusion that any Legislature intended to impose personal liability for *retaliation.*

Plaintiff also argues that the FEHC has interpreted the FEHA as imposing personal liability for retaliation on individuals. He cites a single precedential case. (*Dept. Fair Empl. & Hous. v. J & J King of Beepers* (1999) No. 99-02, FEHC Precedential Decs. 1998-1999, CEB 1, p. 1.) That opinion held that a supervisor was personally liable for harassment. (*Id.* at p. 22-23.) It also stated, "It is further determined that respondents [the employer and the supervisor] are each liable for [the supervisor's] retaliatory termination of complainant, in violation of Government Code, section 12940, subdivisions (a), [former subd.] (f), and [former subd.] (h)." (*Id.* at p. 23.) The opinion does not state the basis for this conclusion. Although an administrative agency's contemporaneous interpretation of a statute under which it operates is ordinarily entitled to great weight, we rejected similar reliance on FEHC decisions in both *Reno, supra,* 18 Cal.4th at pages 660-661, 76 Cal.Rptr.2d 499, 957 P.2d 1333, and *Carrisales v. Department of Corrections, supra,* 21 Cal.4th at pages 1138-1139, 90 Cal.Rptr.2d 804, 988 P.2d 1083. The opinion plaintiff cites contained no legal analysis. Moreover, rather than being contemporaneous, it was decided many years after Assembly Bill No. 1167 added the word "person" to former subdivision (f). We find more convincing the DFEH's contemporaneous assessment of that bill as making merely noncontroversial, technical changes in the law.

For these reasons, we conclude that the employer is liable for retaliation under section 12940, subdivision (h), but nonemployer individuals are not personally

Case 5:08-cv-02950-JF   Document 5-2   Filed 07/11/2008   Page 58 of 65

177 P.3d 232                                                                                                      Page 12
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

liable for their role in that retaliation. We
disapprove***637*1174http://www.westlaw.co
m/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=
7047&FindType=Y&SerialNum=20106888
087*Taylor v. City of Los Angeles Dept. of Water &
Power, supra, 144 Cal.App.4th 1216, 51 Cal.Rptr.3d
206, and Walrath v. Sprinkel, supra, 99 Cal.App.4th
1237, 121 Cal.Rptr.2d 806, to the extent they are
inconsistent with this conclusion.

## III. CONCLUSION

We reverse the judgment of the Court of Appeal and
remand the matter to that court for further
proceedings consistent with this opinion.

WE CONCUR: GEORGE, C.J., BAXTER and
CORRIGAN, J.

WERDEGAR, J., dissenting.

I fully agree with Justice Moreno's dissenting
opinion, which I have signed. I write separately to
emphasize both its conclusion and my disagreement
with the majority.

By enacting the California Fair Employment and
Housing Act (FEHA) ( Gov.Code, § 12900 et seq.)
[FN1] in general, and section 12940 in particular, the
elected branch of our state government has attempted
to respond to one of our society's social ills:
discrimination, harassment and retaliation in the
workplace on the basis of "race, religious creed,
color, national origin, ancestry, physical disability,
mental disability, medical condition, marital status,
sex, age, or sexual orientation."(§ 12940, subd. (a).)
Our role as a court is to construe the statutes thus
enacted, giving the statutory language its plain and
commonsense meaning so as to effectuate and
implement the intent of the Legislature.

> FN1. All statutory references are to the
> Government Code.

We have strayed far from this duty today. In
analyzing the FEHA, the majority finely parses the
statutory language and engages in intricate
deductions of legislative intent. In so doing, the
majority has lost sight of both our proper role and the
basic meaning of the FEHA.

Section 12940, subdivision (h) provides that it shall

be an unlawful employment practice "[f]or *any ...
person* to discharge, expel, or otherwise discriminate
against any person because the person has opposed
any practices**244 forbidden [by the FEHA] or
because the person has filed a complaint, testified, or
assisted in any proceeding under [the FEHA]."
(Italics added.) The language seems clear enough, as
the jury found below. The Court of Appeal agreed, as
has every court before today to have considered the
question. If, as here, a person (such as defendant
Weiss) retaliates against another (such as plaintiff
Jones) because he has filed a complaint about
harassment in the workplace, the person who engages
in   *1175  retaliation   commits   an   unlawful
employment practice and is subject to the legal
remedies set forth in the FEHA. In this simple way,
our Legislature has chosen to make costly the
discrimination against and harassment of employees
on the basis of race and gender and the other
enumerated statutory grounds, evidently concluding
that the high cost visited on such unlawful behavior
will dissuade people from engaging in it and
employers from tolerating it.

The majority undertakes a series of analytical
contortions to reach its conclusion that the phrase
"any ... person" in section 12940, subdivision (h)
does not render liable a supervisor who retaliates
against an employee if the employee exercises his or
her right to complain of unlawful workplace
harassment. Not only do I agree with Justice
Moreno's refutation of the majority's tortured
reasoning, I also find the majority undermines the
entire purpose of the FEHA. Whether personal
liability in these circumstances is more or less
efficacious in reducing or eliminating ***638
workplace discrimination is not for this court to say.
To conclude that the FEHA plainly authorizes such
personal liability is enough.

To the extent the majority holds otherwise, it is
incorrect. To the extent it relies on its view of policy
(see, e.g., maj. opn., *ante,* 72 Cal.Rptr.3d at p. 631,
177 P.3d at pp. 238-239), the majority departs from
our role as a court. Accordingly, I join my dissenting
colleagues in commending the Legislature's attention
to this area of the law.

MORENO, J., dissenting.
Plaintiff Scott Jones alleged that his supervisor,
defendant Jean Weiss, subjected him to sexual

EXHIBIT 7

## Marguerite Meade

| From: | Burlison, Teresa N. [TBurlison@mofo.com] |
|---|---|
| Sent: | Wednesday, April 30, 2008 3:45 PM |
| To: | Marguerite Meade |
| Cc: | Wheeler, Raymond L.; Shostak, Linda E.; Fernandez, Marc G.; Ellingson, Mary Jo |
| Subject: | Siemens/Schmidt - petition for rehearing denied in Jones v. The Lodge at Torrey Pines |

Marguerite,

You likely received this update from the California Supreme Court regarding the Jones v. The Lodge at Torrey Pines case (see below). In light of the Court's denial of the petition for rehearing, and in accordance with our previous discussions, I presume we can expect you to dismiss Holger Liebel and Bjoern Fischer from the Siemens lawsuit within the next week. I look forward to seeing the dismissals filed. Take care, Teresa

Teresa N. Burlison

-----Original Message-----
From: Notify@jud.ca.gov [mailto:Notify@jud.ca.gov]
Sent: Wednesday, April 30, 2008 2:58 PM
To: Burlison, Teresa N.
Subject: Supreme Court of California Case Notification for: S151022

tburlison@mofo.com, the following transaction has occurred in:
JONES v. LODGE AT TORREY PINES PARTNERSHIP
Case: S151022, Supreme Court of California

Date (YYYY-MM-DD):          2008-04-30
Event Description:          Remittitur issued
(civil case)
For more information on this case, go to:
http://appellatecases.courtinfo.ca.gov/search/dockets.cfm?dist=0&doc_id=
463548

Do not reply to this e-mail. Messages sent to this e-mail address will not be processed.

-------------------------------------------------------------------------

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to http://www.mofo.com/Circular230.html

=========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
=========================================================================

EXHIBIT 8

## Marguerite Meade

**From:** Burlison, Teresa N. [TBurlison@mofo.com]

**Sent:** Thursday, May 29, 2008 10:48 AM

**To:** Marguerite Meade

**Subject:** Siemens/Schmidt - Dismissal of Individual Plaintiffs

Marguerite,

In light of my letter to you last week setting forth defendants' promise to cooperate in presenting Holger Liebel and Bjoern Fischer for deposition, please let me know if you will be dismissing these individuals by tomorrow. There is no dispute over the propriety of the dismissals under *Jones*. Moreover, we have sent you the completed dismissal paperwork for your signature and even offered to file the signed documents on plaintiff's behalf. I think we both can agree that it will be silly to have to bring such a straightforward matter to the court's attention, but that unfortunately will be defendants' next step if we continue to face delay on plaintiff's end.

Sincerely, Teresa

Teresa N. Burlison
Attorney
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, CA 94304
Direct: 650.813.5834

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

EXHIBIT 9

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

Marguerite E. Meade
MARGUERITE E. MEADE (SBN 136473)
THE DAVIS LAW FIRM, APC
625 MARKET STREET, 12TH FLOOR
SAN FRANCISCO, CA 94105

ATTORNEY FOR (Name):   PLAINTIFF BONNIE SCHMIDT

Insert name of court and name of judicial district and branch court, if any:

SUPERIOR COURT OF SANTA CLARA

PLAINTIFF/PETITIONER: BONNIE SCHMIDT

DEFENDANT/RESPONDENT: SIEMENS CORPORATION, SIEMENS
MEDICAL SOLUTIONS USA, INC., ET AL

**UCS**

**FILED**

S. BANCAYCO

2008 JUN -3 P 12 12

(stamp)

**REQUEST FOR DISMISSAL**
Personal Injury, Property Damage, or Wrongful Death
Motor Vehicle    |X| Other DISMISS DEFENDANT
Family Law            BJOERN FISCHER ONLY
Eminent Domain
Other (specify):

| CASE NUMBER: |
|---|
| 1-07-CV-091780 |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please dismiss this action as follows:
  a. (1)    With prejudice    (2) |X| Without prejudice

  b. (1)    Complaint    (2) |  | Petition
     (3)    Cross-complaint filed by (name):                                on (date):
     (4)    Cross-complaint filed by (name):                                on (date):
     (5)    Entire action of all parties and all causes of action
     (6)  X  Other (specify):* DISMISS **INDIVIDUAL** DEFENDANT BJOERN FISCHER **ONLY** FROM THE
          **ACTION.** The case continues against the other Defendants.

Date: May 30, 2008

_Marguerite E. Meade_                                          (signature)

(TYPE OR PRINT NAME OF    X  ATTORNEY   |  | PARTY WITHOUT ATTORNEY)

• If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for: Plaintiff,
Bonnie Schmidt
|X| Plaintiff/Petitioner    |  | Defendant/Respondent
|  | Cross - complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF    |  | ATTORNEY   |  | PARTY WITHOUT ATTORNEY)

** If a cross-complaint-or Response (Family Law) seeking affirmative relief is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

(signature)

Attorney or party without attorney for:
|  | Plaintiff/Petitioner    |  | Defendant/Respondent
|  | Cross - complainant

(To be completed by clerk)
3. X   Dismissal entered as requested on (date):        JUN 0 3 2008
4.      Dismissal entered on (date):              as to only (name):
5.      Dismissal not entered as requested for the following reasons (specify):

6.   a. Attorney or party without attorney notified on (date):      JUN 0 3 2008
     b. Attorney or party without attorney not notified. Filing party failed to provide
        a copy to conform    |  | means to return conformed copy

S. BANCAYCO

Date:                                Clerk, by _____ , Deputy
         JUN 0 3 2008

Form Adopted for Mandatory use
Judicial Council of California
CIV-110 [Rev. January 1, 2007]

**REQUEST FOR DISMISSAL**

Legal
Solutions
Plus

Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390

Page 1 of 1

CIV-110

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):
Marguerite E. Meade (SBN 136473)     415 278-1414
THE DAVIS LAW FIRM, APC
625 MARKET STREET, 12TH FLOOR

SAN FRANCISCO, CA 94105

TELEPHONE NO.:

FOR COURT USE ONLY

FILED

2008 JUN -3  P 12 12

ATTORNEY FOR (Name):  PLAINTIFF BONNIE SCHMIDT

Insert name of court and name of judicial district and branch court, if any:
SUPERIOR COURT OF SANTA CLARA

PLAINTIFF/PETITIONER: BONNIE SCHMIDT

DEFENDANT/RESPONDENT: SIEMENS CORPORATION, SIEMENS
MEDICAL SOLUTIONS USA, INC.

**REQUEST FOR DISMISSAL**

Personal Injury, Property Damage, or Wrongful Death
  ☐ Motor Vehicle    ☒ Other DISMISS DEFENDANT
  Family Law              HOLGER LIEBEL ONLY
  Eminent Domain
  ☐ Other (specify):

CASE NUMBER:

1-07-CV-091780

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:
  a. (1)   With prejudice        (2) ☒ Without prejudice
  b. (1)     Complaint          (2) ☐ Petition
     (3)     Cross-complaint filed by (name):                          on (date):
     (4)     Cross-complaint filed by (name):                          on (date):
     (5)     Entire action of all parties and all causes of action
     (6) ☒ Other (specify):* DISMISS INDIVIDUAL DEFENDANT HOLGER LIEBEL ONLY FROM THE
         ACTION.  The case continues against the other Defendants.
Date: May 30, 2008

Marguerite E. Meade (SBN 136473)

(TYPE OR PRINT NAME OF  ☒ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

(SIGNATURE)
Attorney or party without attorney for: Plaintiff,
Bonnie Schmidt

* If dismissal requested is of specified parties only or specified causes of
action only, or of specified cross-complaints only, so state and identify
the parties, causes of action, or cross-complaints to be dismissed.

☒ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross - complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF     ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

(SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint-or Response (Family Law) seeking affirmative relief is on
file, the attorney for cross-complainant (respondent) must sign this consent
if required by Code of Civil Procedure section 581(i) or (j).

☐ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross - complainant

(To be completed by clerk)
3. ☑  Dismissal entered as requested on (date):                    JUN 0 3 2008
4.      Dismissal entered on (date):                as to only (name):
5.      Dismissal not entered as requested for the following reasons (specify):

                                                                    JUN 0 3 2008
6. ☒ a. Attorney or party without attorney notified on (date):
      b. Attorney or party without attorney not notified. Filing party failed to provide
         a copy to conform    ☐ means to return conformed copy

Date:                                     Clerk, by                              , Deputy

                    JUN 0 3 2008

Form Accepted for Mandatory use
Judicial Council of California
CIV-110 [Rev. January 1, 2007]

**REQUEST FOR DISMISSAL**

Legal
Solutions
Lg Plus

Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390